EASTERN DISTRICT PIECE DYE WORKS, INC., Appellant, *v.* THE TRAVELERS INSURANCE COMPANY, HARTFORD, CONNECTICUT, Respondent.

Second Department, November 25, 1921.

Insurance — life insurance — action to recover on policy — defenses of breach of warranty and rescission on ground that insured was not in good health when first premium paid — elements of defense of breach of warranty — breach based on chronic intestinal obstructions existing since birth but unknown to insured — warranty material as matter of law — falsity of representation question for jury — representation not fraudulent as matter of law — whether insured was in good health when first premium paid question of fact — counsel for plaintiff did not consent to trial of issues of fact by court or waive jury trial — complaint improperly dismissed.

To establish the defense of breach of warranty in an action on a life insurance policy it must be shown that the representation made by the insured was material, that it was false, and if false, that it was fraudulent.

The representations contained in the application by the insured that she was in sound condition mentally and physically, that she had never had any bodily or mental infirmity or deformity, and that she had not been disabled nor had she received any medical or surgical attention within . five years from the date of the application, were, as a matter of law, material.

The defense of a breach of warranty was based on the allegation that the insured had chronic intestinal obstructions with disease causing adhesions. It appeared that the insured went to a hospital for a minor operation to cure the effect of a laceration caused by child birth thirty years previously, which, up to the time when the application for the policy was made, had no appreciable effect upon her comfort, well-being or general health; that while under the influence of anæsthetics, the physician discovered an intestinal abnormality; that this condition had continued from the birth of the insured without any indication that it interfered with proper functioning; that insured did not know of that condition, and that the major operation performed to remedy it resulted fatally. *Held,* that it cannot be said, as a matter of law, that the insured's representations were false, but on the contrary whether this condition was such as to render false her representations that she was in sound condition mentally and physically, was a question of fact to be determined by the jury.

And even if said representations were false, they were not fraudulent for the condition was entirely unknown to the insured, and a representation which is true to the best of the knowledge of the insured is not fraudulent.

Therefore, the defense of warranty failed and the complaint should not have been dismissed, for while said representations were material as a matter of law, it was a question of fact for the jury to determine whether they were false and as a matter of law they were not fraudulent.

The clause in the policy prescribing as a condition to the validity thereof a state of good health at the time of the payment of the first premium, was meant to cover any substantial change between the date of the application and the payment of the first premium. If the representations as to the condition were true when made, and if the same condition continued to the time of the payment of the first premium, it follows that, for the purpose of giving validity to the policy, the assured was in good health at that time, but if the representations were false and the assured was not in good health when the first premium was paid, the defense was established, but their falsity was a question of fact for the jury, and the court should not have dismissed the complaint by ruling as matter of law that the assured was not in good health when the first premium was paid.

Plaintiff's counsel did not intend to submit the decision of this question of fact to the court and waive a jury trial, and from the record it appears that the court did not intend to decide any question of fact, for it plainly stated that it was deciding the case as a matter of law. It was not necessary, therefore, for the plaintiff's counsel to request the submission of any facts to the jury in order to save its rights.

APPEAL by the plaintiff, Eastern District Piece Dye Works, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 16th day of March, 1921, upon the dismissal of the complaint by direction of the court at the close of the case after a trial before the court and a jury at the Kings Trial Term, and also from an order, entered in said clerk's office on the 18th day of March, 1921, denying plaintiff's motion to set aside the dismissal of the complaint and for a new trial made upon the minutes.

*Louis Marshall* [*Bernhard Bloch* with him on the brief], for the appellant.

*William J. Moran*, for the respondent.

BLACKMAR, P. J.:

The action is upon a policy of insurance for $25,000 upon the life of Leontine Klein, payable to the plaintiff corporation, of which she was president. The application, dated June 24, 1919, was signed by Mrs. Klein. The first premium was paid July 14, 1919, and the policy was dated and issued September 4, 1919. On November nineteenth following she was admitted to St. Mark's Hospital, where, following an operation, she died on the 26th of November, 1919.

The answer, after some denials not material to the question before the court, set up two defenses: *First*, that the contract of insurance was issued and accepted on the condition that it should not take effect unless the first premium should be paid when the assured was in good health; that when the first premium was paid the assured was not in good health, and that the company had tendered to the plaintiff the sum of $729.25 (being the amount of the first premium paid), and that the tender is kept good; *second*, that the policy was issued in consideration of the declarations, made in the application, to the effect that the applicant was in sound condition mentally and physically; that she had never had any bodily or mental infirmity or deformity and that she had not been disabled nor had she received any medical or surgical atten-

tion for five years prior to the date of her application, which declarations she warranted to be true; that said declarations were false in that when she made the application she was suffering from bodily infirmity and from a lack of sound physical condition, and that she had within five years been disabled and had received medical or surgical attention.

A bill of particulars was ordered of the defenses set forth in the answer, and the bill as served alleged that the respects wherein the assured's representations were false and the assured was not in good health were that she "is said to have had chronic intestinal obstructions with disease causing adhesions."

The evidence showed that Mrs. Klein was fifty-four years of age, and until a few days before entering the hospital had been engaged in active business. An interne in the hospital who had not been licensed to practice as a physician, but took the patient's history, testified that Mrs. Klein stated that she had a falling of the womb and had had for thirty years a perineal tear extending to the rectum, which, however, had caused but little trouble until three years ago. The interne gave in his own words the substance of Mrs. Klein's statement as follows: " Three years ago patient began to notice a mass protruding from the vagina the size of a hazel nut, which gave no pain or discomfort, and no urinary or rectal symptoms. The condition has remained practically the same. Three weeks ago patient suddenly began to feel a sensation of pressure on bladder and rectum, also as if something was giving way in the pelvis. This caused a frequency in micturition and painful defæcation. The symptoms were not very severe, but the patient felt that the time had at last arrived when an operation should be performed. Previous history: Marital, two children; no miscarriages. Gynecological history: Perineal tear 30 years ago, never repaired. * * * Personal: Excellent bowels, fine appetite. Urination: No nocturia or no polyuria." He further testified that she told him that until about three weeks before she came to the hospital she felt perfect.

The operating surgeon, discovering a congenital abnormal condition of the intestines, which was puzzling to him and

614   EASTERN DISTRICT P. D. W., INC., *v.* TRAVELERS INS. CO.

Second Department, November, 1921.          [Vol. 198

such as he had never seen in twenty-six or twenty-seven years' practice, passed beyond the minor operation for which she had come to the hospital and performed a serious major operation to correct or at least alter the condition, and the resulting shock caused her death.

The answer contains two defenses. Reversing their order for convenience of consideration, they are: (a) Breach of warranty, and (b) rescission on the ground that the assured was not in good health when the first premium was paid.

To establish the defense of breach of warranty in a life insurance policy, two things must be proved: *First,* that the representations are false, and *second,* if false, that they are fraudulent. (Insurance Law, § 58.) Since the enactment of this section, or since January 1, 1907, an immaterial representation cannot be a warranty, for fraud cannot be predicated upon an immaterial representation. (See Insurance Law [Gen. Laws, chap. 38; Laws of 1892, chap. 690], § 58, as added by Laws of 1906, chap. 326; now Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 58.) We, therefore, reach the conclusion that the representation must be material, that it must be false, and that it must be accompanied by a fraudulent intent, or it is not a warranty.

The representations contained in the application for the policy in this case, namely, that the applicant was in sound condition mentally and physically, that she had never had any bodily or mental infirmity or deformity, and that she had not been disabled nor had she received any medical or surgical attention for five years prior to the date of the application, were, as matter of law, material. Whether they were false or not was at the very least a question of fact. The representations were meant to describe the normal condition of an ordinary healthy person. They were intended to be the inducement for the issuance of a life insurance policy and, therefore, to exclude a condition of disease, abnormality or disability which might affect or have some bearing upon the duration of life. A reasonable interpretation must be placed upon the representations in view of the purpose for which they were made. (*Cushman.* v. *U. S. Life Ins. Co.,* 70 N. Y. 72; *Peacock* v. *New York Life Ins. Co.,* 20 id. 293; *Schmitt* v. *Michigan Mutual Life Ins. Co.,* 101 App. Div. 12;

*Packard* v. *Metropolitan Life Ins. Co.*, 72 N. H. 1; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274.)

The bill of particulars limiting the answer alleged that the representations were false in that the assured is said to have had chronic intestinal obstruction with disease causing adhesions. She went to the hospital for a minor operation to cure the effects of a laceration caused by child-birth thirty years previously, which, up to the time when the application for the policy was made, had no appreciable effect upon her comfort, well-being or general health. While there, apparently when she was under the influence of anæsthetics, the physician discovered an intestinal abnormality; but this condition had continued for fifty-four years, from her birth, without any indication that it interfered with proper functioning. One may depart from the normal physically and still be sound and have no infirmity, deformity or disease. The excuse for the major operation which resulted fatally was that one of the physicians present thought that the tissue looked malignant, but on subsequent examination it was found healthy and normal. Whether this condition was such as to render false her representations that she was in a sound condition mentally and physically, had never had any bodily or mental infirmity or deformity, and had not been disabled, was a question of fact when we take into consideration the purpose for which such representations were made, namely, to induce the issuance of a life insurance policy. Certainly it cannot be said as matter of law that such representations were false.

But even if they were false, they were certainly not fraudulent. The condition was entirely unknown to the applicant; and a representation which is true to the best of the knowledge of the applicant is not fraudulent.

As to the three elements of warranty, it may be said that the representations were material as matter of law, that it was a question of fact whether they were false, and that as matter of law they were not fraudulent. The defense of warranty, therefore, fails and the court was not justified in dismissing the complaint on the ground of breach of warranty.

It is true that a false representation, even if not fraudulent, may be the basis of relief in equity. If such representation,

**616** EASTERN DISTRICT P. D. W., INC., *v.* TRAVELERS INS. CO.

Second Department, November, 1921.          [Vol. 198

although innocently made, induced the defendant to enter into a contract which it otherwise would not have made, a court of equity may decree a rescission of the contract upon the defendant's returning any benefit that it may have received. But no such defense appears in the answer; and if the defense had been set up, the question of the falsity of the representation would still have been a question of fact.

The other affirmative defense in the answer is that the delivery of the policy and the acceptance of the contract were conditioned upon the applicant's being in good health when the first premium was paid, and that at such time the applicant was not in good health. This defense also rests upon a question of fact, namely, whether the insured was in good health at the time the first premium was paid. The defendant had required certain representations to be made by the applicant before it would consent to issue its policy. Its policy was issued upon the strength of those representations and amounted to a concession on the part of the defendant that if those representations were true the assured was in good health. The clause prescribing as a condition to the validity of the policy, a state of good health at the time of the payment of the first premium, was meant to cover any substantial change between the date of the application and the payment of the first premium. If the representations as to condition were true, and if the same condition had continued to the time of the payment of the first premium, it necessarily follows that, for the purpose of giving validity to the policy, the assured was in good health at that time. The application established the standard of good health for the purpose of issuing the policy, and the phrase " good health," contained in this clause of the policy, has reference to the representations made in the policy.

The best reflection that I can bring to bear on this subject leads to the conclusion that if the representations were false and the assured was not in good health when the first premium was paid, the defense was established, but their falsity was a question of fact for the jury, and it necessarily follows that the court could not dismiss the plaintiff's complaint by ruling as matter of law that the assured was not in good health when the first premium was paid.

I have considered this case with the view that the defendant is bound by its bill of particulars and that the falsity of the representations could be predicated only upon the intestinal condition of the assured; but I think that if the issue were broader and the inquiry was whether the perineal tear or the lacerations due to child-birth were evidence of the falsity of the representations, the same conclusion must be reached, namely, that a question of fact was presented for the jury, and that it was error to dismiss the complaint.

It seems clear on the record that the plaintiff's counsel did not intend to submit the decision of this question of fact to the court, and it is equally clear that the court did not intend to decide any question of fact. The court should not be astute or eager to find in the record a waiver of a jury trial and the submission of a question of fact to the trial court. The trial is conducted under the pressure of time, and the occasion, and it would be unjust to hold that the parties intended to forego the benefit of a verdict of a jury unless the intent so plainly appears as not to admit of argument. We find in the record at the close of the evidence a long colloquy in which both counsel and the court took part. The burden of the argument of plaintiff's counsel was that there was a question of fact which should be submitted to the jury. It is true that at one time during the discussion he requested the direction of a verdict, and it is also true that after the court had announced its decision to dismiss the complaint, no express request was made to submit any question to the jury; but the plaintiff was disarmed by the remarks made by the court itself. Near the end of the long discussion the court said: " I really exercised my ingenuity to find some question of fact that I might appropriately leave to the jury, and after a consideration of the decisions I could not satisfy myself that there was a single fact I could leave to them. I have to take the burden of it myself." This is a plain expression that the court was deciding this case as a matter of law, and after such expression it would have been idle to request the submission of any fact to the jury. Nevertheless, plaintiff's counsel immediately said: " Assuming that they are material, as to the question of whether they were true or not, is a question of fact in the case to be submitted to the

jury," showing that plaintiff's counsel did not intend to waive the jury and submit this question of fact to the court.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

MILLS, RICH, JAYCOX and MANNING, JJ., concur.

Judgment and order reversed and a new trial granted, with costs to abide the event.