## MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
### *v.* HOFFMAN.

[No. 10,609.    Filed December 22, 1921.]

1. INSURANCE. — *Life Insurance.* — *Application.* — *Substantial Truth of Answers.—Representations.*—Where an application for life insurance provided that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, answers to questions contained in the application are representations need be only substantially true. p. 217.

2. INSURANCE.—*Life Insurance.—Truth of Representations.— Jury Questions.*—In an action on a life policy, the question whether representations made by insured in his application for insurance are substantially true, is, for the jury. p. 217.

3. TRIAL.—*Findings of Fact.—Conclusions of Law.*—In an action on a life policy involving the question whether insured made false statements in response to questions contained in the application, the court's finding that insured made no false or fraudulent statement or answer, *held* not a conclusion of law to be disregarded in construing the special finding, but a finding of fact to be considered in determining the correctness of the conclusions of law. p. 218.

4. INSURANCE.—*Life Insurance.—Application.—Falsity of Answers.—Burden of Proof.—Failure to Find.—Effect.*—In an action on a life policy which provided that statements made

by insured in the application should be deemed representations and not warranties, in the absence of fraud, the burden was on the insurer to prove fraud on the part of the insured, and the failure of the court to affirmatively find fraud in respect to such statements was equivalent to a finding against the insurer on that issue. p. 218.

5.    INSURANCE.—*Life Insurance.*—*Application.*—*Finding that Answers Were not False.*—*Effect.*—In an action on a life policy involving the question whether insured made fraudulent statements in the application, the court's finding that the statements and answers of insured were not false and fraudulent *held* equivalent to a finding that they were at least substantially true, such answers and statements constituting representations under the terms of the policy. p. 219.

6.    INSURANCE.—*Life Insurance.*—*Avoidance of Policy.*—*Substantial Truth of Representatives.*—A representation made in an application for life insurance which is substantially true is not sufficient ground for the avoidance of the policy. p. 219.

7.    INSURANCE.—*Life Insurance.*—*Waiver of Conditions.*—*Payment of Premium.*—*Delivery While Insured was in Good Health.*—A provision that a life policy should not take effect unless the premium was paid and the policy was delivered while the insured continued in good health was made for the benefit of the insurer and could be waived by it. p. 222.

8.    INSURANCE.—*Life Insurance.*—*Waiver of Conditions.*—*Delivery While Insured was in Good Health.*—Where an insurance agent delivered a life policy and accepted the premium with full knowledge that insured was ill, notwithstanding the offer of insured to postpone payment of premium and acceptance of the policy until he should recover, and insurer's general state agent, after having been informed by such agent that the policy had been delivered when insured was ill, accepted the premium, thereby ratifying the acts of the local agent, a provision of the policy that it should not take effect until delivered while insured continued in good health was waived. p. 222.

9.    INSURANCE.—*Life Insurance.*—*Policy Provisions.*—*Construction.*—*Delivery to Applicant During "Continuance in Good Health".*—*Avoidance of Policy.*—The provision in a life policy that the policy should not take effect unless the first premium shall have been paid and the policy shall have been delivered to the applicant and during his "continuance in good health" implies that the applicant was in good health when the application was made, and refers solely to a change in condition of health after the making of the application and medical examination. p. 222.

10. INSURANCE. — *Life Insurance.* — *Policy.* — *Construction.* — *"Good Health".*—The words "good health" as used in life policies generally mean the absence of any vice in the constitution and of any disease of a serious nature that has a direct tendency to shorten life; that is, the absence of a condition of health that is commonly regarded as a disease in contradistinction of a temporary ailment or indisposition. p. 224.

From Jay Circuit Court; *Theodore Shockney,* Special Judge.

Action by Katherine Hoffman against the Mutual Life Insurance Company of New York. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frederick L. Allen, Abram Simmons, Charles G. Dailey, Richard H. Hartford* and *John J. Kelly,* for appellant.

*Clark J. Lutz* and *Frank B. Jaqua,* for appellee.

McMAHAN, J.—The facts as found by the court are in substance as follows:

On November 8, 1913, one Frederick Hoffman made a written application to appellant for a life insurance policy on one of the regular applications used by appellant for that purpose. Said application contained the following statement: "All the following statements and answers, and all those that I make to the Official Medical Examiner in continuation of this aplication are true, and are offered to the company as an inducement to issue the proposed policy. * * * The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also it shall have been delivered to and received by me during my continuance in good health." In the statement to the medical examiner the insured was asked what illness or diseases he had had since childhood, to which he replied "no sickness except lumbago." He was also asked to state every physician or practitioner who had prescribed for or treated him and

whom he had consulted within the past five years, to which he answered: "Dr. Boyers, Decatur, Indiana." He also in answer to questions said that his answers to said questions stated all illnesses and diseases he had had since childhood, and that he had given the name of every physician consulted during the past five years. On November 25, 1913, appellant delivered to said insured its policy dated November 8, 1913, for $3,000, the annual premium on said policy being $288.15 payable November 8, of each year. The insured died March 23, 1915. All the premiums on said policy were paid as and when they matured. Appellee who was the wife of insured was named as beneficiary in said policy. Proofs of his death were furnished appellant, as required by the terms of the policy. The insured at the time he made answers to the medical examiner submitted himself to a physical and medical examination by appellant's medical examiner, who then made a full and careful examination of applicant and made a report of his examination to appellant upon a blank furnished by appellant in which said medical examiner reported the examination made in detail stating the age, weight, chest measurements, rate of pulse, result of examination of urine, the absence of any evidence of certain diseases and closing with a statement of the examiner to the effect that he was satisfied that every question had been answered fully and correctly and that he "without reservation" recommended the application. The court further found that the applicant did not make any false or fraudulent statements or answers in either his application for insurance or in his statement to the medical examiner; that he did not warrant any of his statements or answers to be true; that none of his statements or answers to the medical examiner were untrue, nor were any of them made with the intention to deceive or defraud appellant.

In September and November, 1910, the insured procured treatment from a physician for some temporary illness from which he had fully recovered November 8, 1913. On May 31, 1913, while the insured was working at his usual occupation, he was taken sick at his stomach and suffered from a temporary illness or indigestion, not serious in its character and from which he had fully recovered long before November 8, 1913. On June 3, and 7, 1913, his urine was analyzed by his family physician, Dr. Boyer. This analysis failed to show any evidence of nephritis, any abnormal condition, high specific gravity, or casts of albumen; that said insured was not afflicted with or suffering from nephritis or hypertrophy of the heart upon any of the dates here before mentioned; that whatever illness or sickness the insured had been afflicted with prior to November 8, 1913, he had fully recovered from, and was on said last-named date of sound health; that said insured, on November 25, 1913, or prior to said day, had no reason to believe he was afflicted with nephritis or any other serious illness. On November 15, 1913, the insured was ill, and was attended by his family physician, who at that time made an analysis of his urine, and discovered that the insured was then suffering from acute nephritis. He recovered from said attack of acute nephritis, and resumed his usual vocation, he being a contractor, and went about his usual employment until his last sickness in 1915. At no time during the life of said insured did he know that he was afflicted with nephritis, nor was the character of his illness in November, 1913, ever communicated to him by anyone. He died March 23, 1915, from interstitial nephritis.

At the time the insured made and signed his application for insurance and when he made his answers to the medical examiner and at the time of his examination by the examiner the insured was free from the disease

of which he died, and every serious illness, and so far as he knew, was free from the disease with which he died and from all other serious illnesses. The policy in question was delivered to the insured November 25, 1913, by Pearl Hawthorne, appellant's authorized agent, at which time the insured paid said agent the first annual premium of $288.15, which premium was accepted and received by appellant and still retained by appellant. At the time of the delivery of said policy to the insured he was sick and confined to his ,bed with a temporary illness from which he afterwards fully recovered. At the time of delivery of said policy appellant's agent Hawthorne saw the insured, conversed with him and was fully informed of the insured's physical condition before the delivery of the policy, and after being fully informed and advised as to the illness of said applicant, and after the insured had first declined to receive or accept said policy on account of his then present illness until after he should recover therefrom, said insured, at the urgent solicitation and request of said agent, received and accepted said policy and paid the first premium thereon. Before accepting said policy and paying said premium the insured told said agent he would rather not accept the policy, on account of his temporary illness, until after he had fully recovered therefrom, and in response thereto said agent informed the insured, that having made application for the policy when he was in good health and appellant having accepted his application and having issued the policy, he was entitled to receive it and insisted that he should receive it. On November 14, 1913, after said application had been made, the insured was taken sick at his boarding house in Bryant, Indiana, where he was then working and was attended by a physician who informed him that his illness was indigestion. He fully recovered

therefrom within a day or two.  The doctor who attended him during this illness made an analysis of his urine but never informed the insured as to the result of said analysis and the insured never knew the cause of said illness to be any other than indigestion caused from overeating.  A few days after the delivery of said policy appellant's agent, who had solicited the application and who had delivered the policy to the insured, informed appellant's state agent at Indianapolis that he had delivered said policy to the insured, and that at the time of said delivery the insured was ill and confined to his bed, at which time said state agent informed said Hawthorne that although it was against the company's rules, and that he should not have delivered said policy, they would let it go, but for him to be careful in other cases.  Said Hawthorne, at that time, stated that he did not know whether he should have delivered the policy or not, and that he would endeavor to get the policy and return premium which had been paid therefor if the state agent so desired.  The court also found that appellant, by its acts in delivering said policy, waived the provision that it should not take effect unless and until the first premium had been paid during the applicant's continuance in good health, and unless the policy had been delivered to and received by applicant while in good health.  Appellant on June 18, 1915, tendered to appellee the sum of $614, that being the amount of the two premiums paid by insured to the company, with six per cent. interest to the date of tender.  Appellee refused to accept said tender, and refused to deliver said policy to appellant, after which appellant kept and retained said money and did not give or pay any part of it to plaintiff, and never at any time paid said sum or any part thereof into court for the use and benefit of appellee, and that said tender was not made with reasonable

promptness after appellant had received knowledge of the facts.

Upon these facts the court concluded that the law was with appellee and that she should recover $3,000, with interest from April 1, 1915.

The errors assigned and relied upon are that the court erred in its conclusions of law and in overruling appellant's motion for a new trial.

We have here a case where the insurer and the insured agreed that: "All statements made by the insured, shall in the absence of fraud, be deemed representations and not warranties." Appellant, realizing the force and effect of this agreement, assumed the burden of alleging and proving the fraudulent character of the statements relied upon to avoid the policy.

Appellant's first contention is that the facts found by the court show that the answers made by the insured to questions 17 to 21 were false. These questions and answers are as follows: "17. What illness, disease, injuries or surgical operation have you had since childhood? Date of complete recovery. Has had no sickness except lumbago. Yes. 18. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years. Name of physician or practitioner—Dr. Boyers. Address—Decatur, Ind. When consulted—1910. Name of complaint (give details under Q. 17). Lumbago, two days. 19. Have you stated in answer to question 17 all illnesses, diseases, injuries or surgical operations which you have had since childhood? (Ans. Yes or No.) Yes. 20. Have you stated in answer to question 18 every physician and practitioner consulted during the past five years and dates of consultations? (Ans. Yes or No.) Yes. 21. (a) Are you in good health? Yes. If not, what is the impairment? None."

Under the above agreement these answers are repre-

sentations, and as such need be only substantially true.

1, 2.
The question as to whether representations are substantially true is a question of fact for the jury or trial court to determine. *Prudential Life Ins. Co.* v. *Sellers* (1913), 54 Ind. App. 326, 102 N. E. 894.

The special finding of facts shows that in September and November, 1910, the insured procured treatment from a physician for some temporary illness or indisposition; that in May, 1913, while at work he was taken sick at his stomach and vomited and suffered from temporary indigestion caused from overeating, which was not serious in its character, and that the insured had fully recovered from the indispositions so suffered by him in 1910 and 1913, long before he made his application to appellant for insurance. On June 3 and 7, 1913, the insured's urine was examined by his family physician. This analysis failed to show any evidence of an abnormal condition. The insured on November 8, 1913, had fully recovered from whatever illness he had been afflicted prior to that time, and on said date was in sound health, and at no time prior to November 25, 1913, did he know or have any reason to believe he was afflicted with nephritis or any other serious illness. November 15, 1913, the insured was ill and was attended by his family physician who made an analysis of his urine and discovered the insured was then suffering from acute nephritis, from which he recovered and went about his usual business until his final sickness in 1915. The insured never knew he was afflicted with nephritis and the character of his illness with which he was afflicted November 15, 1913, was never communicated to him. He died from interstitial nephritis, March 23, 1915. It is also found that when the insured made and signed his application and when he answered said questions 17 to 21, he was free from the disease of which

he died, and from all and every other serious illness. It is also found that the insured made no false or fraudulent statement or answer in his application for insurance or in his statement to the medical examiner.

Appellant insists that the finding of the court that the insured made no false or fraudulent statement or answer, is a conclusion of law and must be disregarded by us in construing the special finding, and in determining the correctness of the conclusions of law. We cannot agree with appellant in its contention that the statement in the special finding that the insured made no false or fraudulent statement or answer is a conclusion of law and for that reason must be disregarded. But if we should treat it as a conclusion it would not be of any avail to appellant. The burden was on appellant to prove fraud on the part of the insured, and if the court, in its finding, fails to affirmatively find fraud on the part of the insured it would be equivalent to a finding against appellant upon that issue. *Wysong* v. *Nealis* (1895), 13 Ind. App. 165, 41 N. E. 388.

The insured in his statement gave the name and address of the physician who treated him in 1910. There is no finding that he after that time ever consulted or was ever treated by any other physician. If he had ever been treated by a physician other than the one who treated him in 1910, the burden was on appellant to prove that fact.

This court in *Prudential Life Ins. Co.* v. *Sellers, supra,* in discussing this subject, said: "We think that it may also be stated that both of the courts of appeal of this State, and the appellate tribunals of other jurisdictions agree that 'A mere temporary indisposition, not serious in its nature, * * * can not be considered an illness, and the mere calling into a doctor's office for some medicine to relieve such temporary indisposition, or the

calling at the home of the insured by the doctor for the same purpose, can not be considered an attendance by a physician, nor a consultation with a physician within the meaning of the question. 'Illness' as used means 'a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously and not a mere temporary indisposition which does not tend to undermine and weaken the constitution of the insured.' * * * We think the jury might have inferred from the question propounded and from decedent's answer thereto, that she interpreted the question as meaning and intending to inquire whether within said period she had been '*attended*' by a physician for any '*complaint*' of such a character as to affect the general soundness and healthfulness of the system seriously, and that such question was not intended to include a visit by decedent to a physician or a visit or two by the physician at the home of decedent for a mere temporary indisposition which was not regarded by either the insured or her physician as being of such serious character as in any way to undermine and weaken the constitution."

The finding that the statements and answers of the insured were not false and fraudulent must, in so far as the issues in this case are concerned, be held 5, 6. equivalent to a finding that they were at least substantially true. And a representation that is substantially true is not sufficient ground for the avoidance of an insurance policy. *Ebner, Admr.,* v. *Ohio, etc., Ins. Co.* (1918), 69 Ind. App. 32, 121 N. E. 315.

Appellant calls attention to the statements in the special finding wherein the court found that the insured and appellee had each duly performed all the conditions of the policy by them to be performed; that the insured did not warrant his statements and answers to be true; that the appellant had waived the provision that the

policy should not take effect unless the first premium was paid and the policy delivered during the good health of the insured, and that the tender of the return of the premiums paid was not made with reasonable promptness, and says they are each conclusions of law and should be disregarded. But if we view them as conclusions of law, there are sufficient facts remaining to support the conclusions of law as stated by the court.

Appellant next contends that the insured by the condition in the contract that he should be in good health at the time when the policy was delivered to him, warranted absolutely that he was in good health at that time. Without entering into a review of all the authorities cited by appellant in support of this contention, it is sufficient to say that the facts in the cases cited are very different from the facts in this case. In *Mutual Life Ins. Co.* v. *Willey* (1919), 133 Md. 665, 106 Atl. 163, the policy was for less than $300 and no medical examination was had. The insured had and knew he had tuberculosis. In *Goldstein* v. *New York Life Ins. Co.* (1917), 162 N. Y. Supp. 1088, what was thought a mere indisposition when the application was made became worse, and the applicant, pending his application and before the policy was delivered, was operated upon for cancer. When the policy was delivered the insured knew of his serious illness and the insurer had no knowledge of the changed condition. In *Mutual Life Ins. Co.* v. *Hilton-Green* (1916), 241 U. S. 613, 60 L. Ed. 1203, the soliciting agent and the company's examining physician knew of the diseased condition of the applicant, and with such knowledge, for their own financial benefit, with the knowledge of the applicant, concealed the facts from the insurance company. The applicant there had actual knowledge that the agents were not acting in good faith with the insurance company. In some of the cases cited there was no provision that the

statements should be representations and not warranties, and no question as to estoppel or waiver was involved.

In the instant case the court found that the insured, when he signed the application and when the policy was delivered to him, was not afflicted with any serious illness, nor did he have reason to believe he was suffering from any such illness. The agent who delivered the policy and collected the premium saw the insured, talked with him, and knew that he at that time was in ill health and confined to his bed. The insured first declined to receive or accept the policy on account of his then condition and suggested that they wait until he should recover, but at the urgent solicitation and request of the agent, he accepted the policy and paid the first premium. Soon thereafter the agent, who delivered the policy and collected the premium, reported the circumstances connected with such delivery to the general state agent of appellant, and informed such state agent that the policy had been delivered to the insured when he was ill and confined to his bed. After being advised by the agent who delivered the policy, that he would return the premium and try to get the policy back if the state agent so desired, the state agent, after telling the agent that the policy should not have been delivered under such circumstancs, said they would let it go that time, but for him to be more careful in the future. Appellant's general agent, with knowledge sufficient to put him upon inquiry as to the condition of the insured's health when the policy was delivered, ratified the act of the agent in delivering the policy and accepting the premium, and with such knowledge he subsequently collected the next annual premium.

The provision that the policy should not take effect unless the premium was paid and the policy was delivered while the insured continued in good health was a

provision made for the benefit of the insurance company and could be waived by it. *Farmers, etc., Ins. Co.* v. *Hale* (1919), 69 Ind. 413, 122 N. E. 19; *Behler, Admx.,* v. *German Mut. Fire Ins. Co.* (1879), 68 Ind. 347.

From the facts found we hold that appellant by accepting and retaining the premiums with knowledge of insured's condition at the time the policy was delivered, waived the provision of the policy now under discussion. Under the facts as found by the court, appellant could not rescind the contract. This being true, it is not necessary for us to determine whether the appellant in order to keep its tender good, was required to pay the amount of the tender into court for the use and benefit of appellee upon her refusal to accept the tender. But on this subject, see: *Grand Lodge, etc., Trainmen* v. *Clark* (1920), 189 Ind. 373, 127 N. E. 280; *Commercial Life Ins. Co.* v. *Schroyer* (1911), 176 Ind. 657, 95 N. E. 1004; *Phoenix Ins. Co.* v. *Overman* (1899), 21 Ind. App. 516, 52 N. E. 771.

The provision that unless the first premium shall have been paid and the policy shall have been delivered to the applicant during his "continuance in good health" implies that the applicant was in good health when the application was made. Whether the insurance company issued a policy depended upon the statements contained in the application and in the medical examination. The clause in question has no reference to any unsoundness of health at the time of or previous to the application and medical examination. It refers solely to a change in the condition of health after the making of the application and medical examination, and when it is not shown that the alleged unsoundness of health did not occur between the date of the application and medical examination and the delivery of the policy, the insurance company must rely on the state-

ments in the application and medical statement to avoid a recovery on the policy, and not upon the clause in question. *Western & Southern Life Ins. Co.* v. *Davis* (1910), 141 Ky. 358, 132 S. W. 410.

The court did not err in its conclusions of law.

Appellant next insists that the court erred in overruling its motion for a new trial. The main contention in support of this proposition is that the finding of the court is not sustained by sufficient evidence, and is directed particularly to that part of the finding wherein the court finds that the agent at the time he made the delivery of the policy was "fully informed and advised" as to the then illness of the insured. We do not think it makes much difference in this case whether such agent was "fully" advised as to said illness or not. The court further finds that the insured fully recovered from the illness suffered by him at the time the policy was delivered; that whatever illness he had at that time was a mere temporary illness and there is evidence to support this finding. The evidence also shows that when the agent delivered the policy, he saw and conversed with the insured, knew he was sick and confined to his bed. After being informed by the insured that he thought it best not to accept or pay for the policy in his then condition, the agent insisted that the applicant accept the policy, delivered the policy, and collected the premium therefor. The circumstances surrounding the delivery of the policy and the collection of the premium were communicated to the general state agent of appellant, who after being informed that the insured was sick when the policy was delivered, not only approved the act of the agent in collecting the premiums, but without making any investigation or attempting to rescind, collected the next annual premium.

The facts in this case as disclosed by the evidence are quite different than were the facts in *Thompson* v. *Trav-*

*elers' Ins. Co.* (1904), 13 N. Dak. 444, 101 N. W. 900, cited by appellant. There the application was made August 23, 1900. September 1, the insured met with an accident. He was thereafter under the care of a physician, visited a physician's office in his home town, went to another city for treatment, remained there three or four days, returned to his home September 10. September 13, he was in bed part of the time and made arrangements with another person to pay his insurance premium and procure the policy for him. The premium was paid and the policy delivered to such other person the next day, September 15. September 16, the insured became worse, called a physician the morning of the seventeenth, and was under the care of a physician from that time until his death, which occurred September 23. The answer in that case specifically alleged that subsequent to the date of the application, applicant had received an injury and as a result thereof was, at the time when the premium was paid, suffering from such injury and with such disease contracted subsequent to his application from which he later died.

The provision of the policy in that case was, "This policy shall not take effect unless the first premium is actually paid while the insured is in good health."

10. No knowledge of the injury to the insured was brought to any general agent of the insurance company as in the instant case. The question as to whether a person is of sound health depends upon the circumstances of the particular case and is usually a question for the jury. *Packard* v. *Insurance Co.* (1903), 72 N. H. 1, 54 Atl. 287. And in determining what is meant by the words "good health," it has been held that a mere temporary indisposition or ailment is not ordinarily regarded as rendering the health unsound within the meaning of those words. Good health, generally speaking, means the absence of any vice in the

constitution and of any disease of a serious nature that has a direct tendency to shorten life,—the absen~e of a condition of health that is commonly regarded as a disease in contradistinction to a temporary ailment or indisposition. *Plumb* v. *Penn. Mut. Life Ins. Co.* (1895), 108 Mich. 94, 65 N. W. 611.

What we have heretofore said disposes of all other questions presented by appellant. There was no error in overruling the motion for a new trial.

Judgment affirmed.