## MUTUAL LIFE INS. CO. OF NEW YORK v. FREY.
### No. 7297.

Circuit Court of Appeals, Ninth Circuit.
June 4, 1934.

F. Eldred Boland and Knight, Boland & Riordan, all of San Francisco, Cal., for appellant.

Norman A. Eisner and Carl R. Schulz, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

260

WILBUR, Circuit Judge.

The jury returned a verdict in favor of appellee on two $10,000 insurance policies issued by appellant insurance company on the life of Walter E. Frey, deceased. Appellant has appealed from the judgment entered thereon. Appellee is the beneficiary named in one of the policies and is the assignee of the other policy. Action was also brought on three other policies of insurance on the life of Walter E. Frey dated June 1, 1932, but the judgment on these was in favor of appellant and no cross-appeal has been taken. We need not therefore consider them.

On March 4, 1932, Walter E. Frey made written application to appellant for three policies of insurance on his life as follows: $35,000 payable to San Francisco Milling Company as beneficiary, $10,000 payable to Selma Steventon, a sister, as beneficiary, and $10,000 payable to Herbert E. Frey, a brother, as beneficiary. The insured reported to Dr. Allen, appellant's physician, for a medical examination on March 5, 1932, and was found to be in good health, and Dr. Allen so reported to appellant. Appellant refused to issue the policy for $35,000 payable to the San Francisco Milling Company, but issued the two $10,000 policies which were forwarded to its San Francisco office. However, before they were delivered to the insured, he notified appellant that he contemplated making flights in a private airplane and appellant therefore recalled the policies. After the insured agreed to confine his flying to regular commercial air lines with licensed pilots, between definitely established airports, appellant decided to accept the risk and the policies were again sent to appellant's San Francisco office for delivery to the insured, but attached to the policies was a rider to the effect that the policies would be ineffective if insured made any flight in a private airplane within a year from the date of the policies. The policies when first sent to the manager of the San Francisco office were accompanied by a letter referred to in the record as Exhibit J directing that the policies be not delivered until the insured had signed a written acceptance thereof in the form contained in Exhibit J. Mr. Murray, appellant's cashier, testified that: "The yellow slips introduced as defendant's Exhibit 'J' have reference to the policies that were returned to the company. About April 8, 1932, new policies were sent out by the company accompanying defendant's Exhibit 'G.' Those were the policies I turned over to Mr. Steinfeld after I received them in San Francisco." Exhibit G

did not repeat the directions contained in Exhibit J but merely stated that delivery was subject to applicant's written acknowledgment of the clause regarding flights in a private airplane. This acknowledgment was signed by the insured. When these policies were received at appellant's San Francisco office, Mr. Steinfeld, the soliciting agent, gave his personal checks to Mr. Murray for the net premiums, that is, the total premiums less his commissions and received from him the two insurance policies together with appellant's receipt in full for the premiums. Steinfeld delivered these policies together with the receipt to Selma Steventon, one of the beneficiaries, at the office of the San Francisco Milling Company on or about April 11, 1932, stating to her at the time of delivery that he had paid the premiums thereon to the company. "Yellow slips" (Exhibit J) containing the written acceptance of the policies were not signed by the insured nor by the beneficiaries. Both Selma Steventon and Herbert E. Frey, who were present at the time Steinfeld left the policies with them, testified that they had not seen the "yellow slips" and that they were not asked to sign them. Steinfeld did not collect the premiums from the insured or beneficiaries and two or three days later, without notice to the insured or the beneficiaries, he stopped payment on the checks he had given to appellant for the premiums. When the policies were delivered they were placed in the office safe of the San Francisco Milling Company by Selma Steventon where they remained for about six weeks. On April 16, 1932, two days after Steinfeld had stopped payment on his checks, he wrote to Herbert E. Frey, one of the beneficiaries, the appellee herein, stating: "As you know, you have a receipt from the company for the full first year's premiums on these policies and I trust you will be able to secure for me the [San Francisco Milling] company's note for the total amount, so that we may proceed to get some more insurance issued."

On or about May 24, 1932, at the request of Steinfeld, the policies were given to him by Selma Steventon "for auditing purposes." He promised to return the policies but did not do so. They were sent by him to appellant's New York office and there marked "cancelled." Subsequent to this time, when asked for the return of the policies, Steinfeld replied that the policies were in effect and that he would return them. The insured's application for the policies states: "That the proposed policy should not take effect unless and until delivered to and received by the insured, the beneficiary, or by the person who herein

agrees to pay the premiums, during the insured's continuance in good health and unless and until the first premium shall have been paid during the insured's continuance in good health. * * * "

Each of the policies contains the following acknowledgment of payment of the first premium: "This policy is issued in consideration of the application and of the payment of the first premium of one hundred fifty-two and 21/100 dollars ($152.21) receipt of which is hereby acknowledgment." Walter E. Frey, the insured, died suddenly June 4, 1932. Dr. Berger, who performed the autopsy, testified that the cause of death of the insured was acute dilation of the heart, chronic myocarditis, and coronary sclerosis with occlusion, the latter being the immediate cause of death, and described the conditions he found which led him to that conclusion. Dr. Allen, the appellant's physician, who had examined the insured on March 5th and again on June 1, 1932, as a basis for determining his insurability, testified that he examined the insured's heart on those occasions and found it to be normal. Dr. Kauffman testified to the effect that the heart and arterial changes disclosed by the autopsy were ordinary changes in a heart and vessels found in individuals forty years of age and over and that such findings do not necessarily indicate that the person examined was not in good health prior to the time of death.

██ Appellant claims that by the application the payment of the first premium was made a condition precedent which could not be waived except by certain specified officers of the company and that a recital of payment contained in the policy would not prevail over an unperformed condition precedent. This contention is untenable. The contract of insurance was entered into in California. Section 2598 of the Civil Code of California provides: "An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid." Section 2598 of the Civil Code of California entered into and became a part of the contract of insurance. Ætna Life Ins. Co. v. Geher (C. C. A. 9) 50 F.(2d) 657; New York Life Ins. Co. v. Gist (C. C. A. 9) 63 F.(2d) 732. Section 2598, Cal. Civ. Code is clear and unambiguous and its effect is to preclude the insurer, where receipt of the premium is acknowleged in the policy, from raising any question as to its payment so as to make the policy ineffective for nonpayment of premium. New York Life Ins. Co. v. Gist, supra. The case at bar is clearly within the purview of section 2598, Cal. Civ. Code. In determining the validity of the delivered policy it must be assumed that the first premium was paid.

██ Appellant further contends that there was no meeting of the minds of the parties nor in fact any delivery or acceptance of the policies because of the delivery of the policies without the written receipt or acceptance being signed which was required by the appellant in its letter of instructions to the manager of its San Francisco office. There is nothing in the policies or application making the execution of a written receipt or acceptance by the insured a condition to the policies becoming effective. Before such a limitation upon the authority of the agent to deliver the policies could be binding on the beneficiaries or insured, they must have had knowledge thereof. Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11; Pacific Mut. Life Ins. Co. v. Barton (C. C. A.) 50 F.(2d) 362; New York Life Ins. Co. v. Baker (C. C. A.) 33 F.(2d) 434.

██ Appellant also contends that when the policies were delivered the insured was not in good health and that therefore the policies did not become effective under the provision of the application above quoted. Appellant argues that in view of the facts disclosed by the autopsy, the insured could not have been in good health at the time the policies were delivered and some of appellant's witnesses testified that in view of these findings in their opinion the insured was not then in good health. The court instructed the jury that the appellee could not recover if the insured was not in good health at the time the policies were delivered. The evidence on that question was conflicting, as above stated, and the finding of the jury thereon cannot be disturbed. Moreover, as stated by this court in Northwestern Mut. Life Ins. Co. v. Wiggins, 15 F.(2d) 646, 648: " 'Good health,' 'illness,' and 'disease' must be considered, in an application for insurance, not in the light of scientific technical definitions, but in the light of the insured's understanding in connection with which the terms are employed in the examination."

██ "Continued good health" is a relative term and manifestly relates to the representations made in the application and medi-

262

cal examination as to his health. In the absence of fraud, misrepresentation, or concealment, the condition of the application is fulfilled when delivery is made while the insured is in the same state of health as at the time of the application and physical examination. There is no claim in the case at bar that the insured's health changed between the date of the application and physical examination and the date of the delivery of the policies. We agree with the rule stated in Mutual Life Ins. Co. of N. Y. v. Hoffman, 77 Ind. App. 209, 133 N. E. 405, 409, as follows: "The provision that unless the first premium shall have been paid and the policy shall have been delivered to the applicant during his 'continuance in good health' implies that the applicant was in good health when the application was made. Whether the insurance company issued a policy depended upon the statements contained in the application and in the medical examination, the clause in question has no reference to any unsoundness of health at the time of or previous to the application and medical examination. It refers solely to a change in the condition of health after the making of the application and medical examination, and when it is not shown that the alleged unsoundness of health did not occur between the date of the application and medical examination and the delivery of the policy, the insurance company must rely on the statements in the application and medical statement to avoid a recovery on the policy, and not upon the clause in question."

See, also, Chinery v. Metropolitan Life Ins. Co., 112 Misc. 107, 182 N. Y. S. 555.

It is also appellant's contention that the policies have been returned and canceled. There is no plea of cancellation or rescission but rather that the policies never became effective. The policies were not returned to appellant for cancellation but to its soliciting agent for "auditing purposes only." There could be no cancellation of the contract by the appellant without the consent of the other party thereto. There was no such consent.

The matters of cancellation and of effective delivery were submitted to the jury under appropriate instructions. On conflicting evidence the jury determined the issues in favor of appellee and there is substantial evidence to support that conclusion so that the verdict of the jury is conclusive in this respect. Inter-Southern Life Ins. Co. v. McElroy (C. C. A.) 38 F.(2d) 557, 559.

Judgment affirmed.