## COMBS v. EQUITABLE LIFE INS. CO. OF IOWA.

### No. 16.

District Court, W. D. Virginia, at Abingdon.

Oct. 9, 1940.

Horace Sutherland, of Galax, Va., and F. H. Combs, of Grundy, Va., for plaintiff.

Leonard G. Muse and John L. Walker, both of Roanoke, Va. (Woods, Chitwood, Coxe, Rogers & Muse, of Roanoke, Va., on the brief), for defendant.

BARKSDALE, District Judge.

This case having been tried upon the facts by the court without a jury, the court doth hereby find the facts specially and state its conclusions of law thereon, and direct the entry of the appropriate judgment, as follows:

### Findings of Fact.

On April 5, 1938, plaintiff's decedent, Dewey O. Combs, a student at the Virginia Polytechnic Institute at Blacksburg, Virginia, signed a written application to defendant company for a $5,000 life insurance policy, and delivered it to defendant's soliciting agent, G. M. Brunk. On the same day, Combs was examined by defendant's examining physician. Combs informed the medical examiner, in effect, that he was and had been in good health, had never had any serious disease or ailment, and that he had never suffered from any ailment or disease of the lungs. On the basis of this information and his own medical examination, the examiner approved the application, which was forwarded to the home office of the defendant insurance company. Combs did not pay the initial premium at the time he applied for the insurance. The application contained, amongst others, the following provision: "I agree: * * * (2) that if the entire first premium stipulated in the policy contract issued for the insurance hereby applied for is not paid to the Company or its Agent at the time of making this application, * * * the Company shall incur no liability under the policy issued until said policy is delivered to me and the entire first premium therefor is actually paid while I am in good health, and then only if I have not consulted or been treated by any physician since the date of the medical examination for this policy, * * *."

The application was approved by the defendant insurance company, which accordingly issued the policy applied for, dated April 9, 1938, and forwarded it to Brunk for delivery to Combs.

On April 14, 1938, Combs consulted Dr. Broome, a chest specialist at Catawba Sanatorium. This doctor secured a detailed history from Combs, made X-ray photographs of his chest, had his sputum examined, and made a stethoscopic and general examination of him. This examination disclosed that Combs had moderately severe chronic bronchiectasis, which is an infection and dilation of the bronchial tubes. There is no known cure for this disease when both lungs are involved, which was true in Combs' case, and the disease renders one affected with it more susceptible and more vulnerable to bronchial pneumonia.

Dr. Broome urgently advised Combs to have further hospital treatment in Roanoke to clear up his upper respiratory infection and then to go to a warm dry climate, after he finished school in June. At Combs' request, by letter dated April 16, 1938, and mailed on that or the following day, Dr. Broome wrote to Dr. Phlegar in Blacksburg a detailed report of his findings and conclusions, and in order to dispel any apprehension that Combs might have tuberculosis, and to remind him again of the doctor's

urgent advice as to his future course, sent a copy of this letter to Combs.

There had been no change in Combs' condition of health between April 5th, the date of his examination by the insurance company's medical examiner at Blacksburg, and April 14th, the date of his examination by Dr. Broome at Catawba.

On April 22, 1938, defendant's soliciting agent, Brunk, delivered the policy to Combs and collected the first premium, and told Combs that by accepting the policy and paying the premium the policy would be in effect and would protect him on a trip to Charlottesville which Combs then contemplated. At and before the delivery of the policy and the collection for the premium, Brunk knew that Combs had been examined by a physician at Catawba Sanatorium, but did not know that Combs had chronic bronchiectasis, as, referring to this examination, Combs had told him that they did not find anything wrong with him.

Shortly thereafter, at the instance of one of his professors who was not satisfied with Dr. Broome's report, Combs went to the University of Virginia Hospital, where he was examined on May 6 and 7, 1938, by two doctors who confirmed the Catawba doctor's diagnosis of chronic bronchiectasis.

On May 22, 1938, Combs died of bronchial pneumonia and chronic bronchiectasis, of which death proper and timely proof was given the defendant.

If, before the issuance of the policy the fact that Combs had chronic bronchiectasis had been known by defendant, it would not have issued the policy.

The insurance policy contained amongst others the following provisions: "This policy, together with the application therefor, shall constitute the entire contract between the parties", and: "No agent is authorized to make, modify or discharge contracts, or to waive forfeitures."

A photostatic copy of the application was attached to the policy that was delivered to Combs. After Combs' death, the company refused payment on his policy, and tendered to the plaintiff a refund of the premium paid, with interest. This was declined by the plaintiff, and this suit was instituted.

### Conclusions of Law.

My conclusions of law are:

(1) That the provisions of the policy, providing that there be no liability thereon unless it be delivered and the first premium paid while Combs was in good health, and then only if he had not consulted a physician after the date of his medical examination therefor, constituted conditions precedent to the validity of the policy.

(2) That within the meaning of the policy, Combs was not in good health at the time of its delivery, and also that he had consulted a physician since the date of his medical examination for the policy, and therefore there was a breach of each condition precedent.

(3) That the action of defendant's agent, Brunk, in delivering the policy and collecting the premium therefor from Combs, did not constitute a waiver of the breach of the conditions precedent, for the reasons, first, that he did not have full knowledge of the facts, and, second, that such waiver was beyond the scope of his authority, and by virtue of the express provisions in the policy Combs was charged with notice that such waiver was beyond the scope of the agent's authority.

(4) That by reason of the breach of conditions precedent, there is no liability upon the defendant on the policy here sued on.

An order will be entered dismissing this action at the plaintiff's costs, but directing the clerk to deliver to the plaintiff, or his counsel, the check, filed by defendant with its answer, payable to the order of the plaintiff, for the amount of the premium paid on the policy, with interest to date of tender.

### Opinion.

■■ Under the doctrine of Erie Railway Co. v. Tompkins, 304 U.S. 64, 54 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (see also, Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, American National Ins. Co. v. Belch, 4 Cir., 100 F.2d 48, and Home Life Insurance Co. v. Moon, 4 Cir., 110 F.2d 184), this case is of course governed by Virginia law. However, no Virginia decision precisely governing the determination of this case has been cited to me, nor do I find any. So far as applicable, the Virginia decisions, in my opinion, support the conclusions reached herein. In the absence of Virginia authorities, I must have recourse to general law and my own conclusions as to reason and principle.

■■ Under the Virginia law, with which I entirely agree, both the phrases, "good health" and "consultation of a physi-

cian", are relative terms. As to the term "good health", it would seem that an ailment, ordinarily trivial and temporary, would not render a person not "in good health". For instance, it is hard to believe that any court would hold that a pimple on one's nose or an ordinary bad cold would render one not "in good health", although the consequences of either one of these ordinarily trivial ailments may be lethal. Likewise, the phrase, "consultation of a physician", would hardly include some trivial or casual inquiry. New York Life Insurance Co. v. Franklin, 118 Va. 418, 87 S.E. 584, and Flannagan v. Northwestern Mutual Insurance Co., 152 Va. 38, 146 S.E. 353. However, the ailment, chronic bronchiectasis, which Combs, the insured, was suffering from, was neither trivial nor temporary. It was a serious condition and Combs had been apprised of its seriousness, both verbally and in writing by Dr. Broome, and urged, as soon as conveniently possible, to have hospital treatment therefor, and then go far from home to a warm dry climate.

Likewise, his consultation of a physician, Dr. Broome, was by no means trivial nor casual. On the other hand, it was thorough and comprehensive, and resulted in the diagnosis of a serious situation, and urgent advice for the future, communicated to Combs by Dr. Broome both verbally and later in writing. That Combs' consultation with Dr. Broome and the condition of his health were of such seriousness as to come within the fair meaning of the provisions in the policy does not seem to me to be a question about which reasonable men could differ.

I am not bound by Hungate v. New York Life Insurance Co., 267 Ill.App. 257, nor other cases relied upon by the plaintiff, as holding that delivery "in good health" means that insured's health has not changed for the worse between his medical examination and delivery of the policy. Metropolitan Life Insurance Co. v. Moore, 117 Ky. 651, 79 S.W. 219; Western, etc., Insurance Co. v. Davis, 141 Ky. 358, 132 S.W. 410; Modern Woodmen, etc. v. Atkinson, 153 Ky. 527, 155 S.W. 1135; Eastern District, etc., v. Travelers' Insurance Co., 198 App.Div. 610, 190 N.Y.S. 822; Mutual Life Insurance Co. v. Hoffman, 77 Ind.App. 209, 133 N.E. 405; New York Life Insurance Co. v. Smith (Miss.) 91 So. 456; Chinery v. Metropolitan Life Insurance Co., 112 Misc. 107, 182 N.Y.S. 555; Webster v. Columbia National, etc., Co., 131 App.Div. 837, 116 N.Y.S. 404. Some of these cases are distinguishable. For instance, the decisions in the cases of Chinery v. Metropolitan Life Insurance Co., supra, and Webster v. Columbia National, etc., Co., supra, were based on the incontestable clauses of the policies; in the case of Mutual Life Insurance Co. v. Hoffman, supra [77 Ind.App. 209, 133 N.E. 410], the phrase, "continuance in good health" was used. As to those cases just cited which are definitely in point, I will not follow them because I believe they are unsound. I do not think that there is any justification on reason and principle for reading into the policy something which is not there. Kennard v. Travelers' Protective Association, 157 Va. 153, 157, 160 S.E. 38; Indemnity Insurance Co. v. Jordan, 158 Va. 834, 841, 164 S.E. 539; Holland Supply Corp. v. State Farm Mutual, etc., Insurance Co., 166 Va. 331, 339, 186 S.E. 56.

Nor am I bound by, nor will I follow, the North Carolina doctrine that the provision as to delivery in good health is executory in its nature, authorizing the company to withhold the policy in case the insured should be taken ill before delivery, but where the policy has been finally delivered, the company is concluded on this and other like stipulations, except for fraud. National Life Insurance Co. v. Grady, 185 N.C. 348, 117 S.E. 289, and cases therein cited.

The following cases seem to me to support the conclusions which I have reached on this phase of the case: New York Life Insurance Co. v. Gist, 9 Cir., 63 F.2d 732, certiorari denied 290 U.S. 651, 54 S.Ct. 68, 78 L.Ed. 564; Subar v. New York Life Insurance Co., 6 Cir., 60 F.2d 239; Wilder v. New York Life Insurance Co., 7 Cir., 81 F.2d 89; DeRoy v. New York Life Insurance Co., D.C.W.Dist. of Pa., 52 F.2d 894; Jensen v. New York Life Insurance Co., 8 Cir., 59 F.2d 957; Gill v. Mutual Life Insurance Co., 8 Cir., 63 F.2d 967; Great National Life Insurance Co. v. Hulme, 134 Texas 539, 136 S.W.2d 602; Mutual Life Insurance Co. v. Connell, 43 Ohio App. 415, 183 N.E. 286; Youngblood v. Prudential Insurance Co., 109 Pa.Super. 20, 165 A. 666; New York Life Insurance Co. v. Watkin, 229 App.Div. 211, 241 N.Y.S. 441; National Life & Accident Co. v. Hugger, 158 Miss. 686, 131 So. 75; Polachek v. New York Life Insurance Co., 151 Misc. 172, 270 N.Y.S. 884.

As to the question of waiver, Jensen v. New York Life Insurance Co.,

supra; Curtis v. Prudential Insurance Co., 4 Cir., 55 F.2d 97; Silverman v. New York Life Insurance Co., 65 App.D.C. 29, 79 F. 2d 154; Gill v. Mutual Life Insurance Co., supra; Great National Life Insurance Co. v. Hulme, supra; Mutual Life Insurance Co. v. Connell, supra; Youngblood v. Prudential Insurance Co., supra, and Price v. Mutual Life Insurance Co., 109 Pa. Super. 419, 167 A. 233, support the conclusion reached by me. Royal Insurance Co. v. Poole, 148 Va. 363, 138 S.E. 487, and Royal Indemnity Co. v. Hook, 155 Va. 956, 157 S.E. 414, are not in conflict, in my opinion, because in those cases the agent's power to waive was predicated upon the fact that limitations upon his authority were not communicated to the person with whom he dealt. Here, the limitations on the agent's authority were plainly stated in the insurance policy, which in my opinion constituted notice to Combs. In the case of Mutual Benefit Asso. v. Ratcliffe, 163 Va. 325, 175 S.E. 870, it was held that the insured was charged with notice of the contents of his application for insurance, because when the policy was delivered to him it had a copy of the application attached. It would seem to me, a fortiori, that the insured is charged with notice of the policy provisions themselves.

I have not considered the fire insurance cases, because I think they stand upon a different footing altogether.