BRONX SAVINGS BANK, Plaintiff, *v.* ANNA WEIGANDT, Defendant.

Supreme Court, Special Term, New York County, May 10, 1955.

*John McGrath* for plaintiff.

*Jack H. Hantman* for defendant.

SAYPOL, J. The plaintiff alleging false and untrue material representations of good health by the insured deceased in the procurement of a policy of life insurance seeks a declaratory judgment against the named beneficiary, the widow, that the policy is void and in a second cause of action, after realleging the misrepresentation, sues for a similar declaration for violation of the condition precedent. The defense coupled with denials asserts a counterclaim alleging the good health of the insured and the consequent validity of the policy and demands payment of the benefit.

Lawrence Weigandt executed an application on April 10, 1953, on plaintiff's printed form, for a $2,500 policy of savings bank insurance on his life, payable upon receipt of due proof of death. The application was in three parts, Parts I and II prepared by the deceased and Part III by the plaintiff's physician who examined the applicant at the time of the execution of the application and thereupon recorded and certified his findings which of course reflected the plaintiff's answers to related questions on Part II of the application and thereupon the policy was delivered. The following appears at the bottom of Part I of the application: " The statements contained herein are true and are made for the purpose of inducing the Bank to issue a policy of life insurance. I agree that: 1. If the first premium has been paid when this application is delivered to the Bank * * * 2. If the first premium has not been so paid, the policy shall not take effect until the first premium is paid and the

policy delivered while the person to be insured is in good health. 3. A copy of Part I and Part II of this application shall be attached to and made part of the policy. The policy, together with the application, shall constitute the entire contract and cannot be modified except by endorsement on the policy by the Bank.'' Accordingly, the application became part of the insurance contract when the first premium was paid and the policy delivered on April 17, 1953.

Lawrence Weigandt died on July 20, 1953. Upon post-mortem examination by the medical examiner of the City of New York, multiple evidence was found of tubercular disease, although that malady had no connection with his death. In Part II of the application is a detailed group of questions about his health which were answered by Weigandt. Item 15 (f) was answered '' No '' to the question reading: '' Have you ever had, been told that you had, or been treated for: (f) Tuberculosis,'' and at the foot of the page above his signature made in the presence of plaintiff's examining physician he stated: '' Except as stated above I am now in good health. The statements herein are true, fully and correctly recorded, and made for the purpose of inducing the Bank to issue insurance on my life.'' In Part III of the application, in answer to item 19, the insurer's physician inscribed that the applicant's general appearance was '' healthy ''. Item 33 is a detailed inquiry for ascertainment of past or present disorders in eleven major organs of the applicant's body and as to each it is answered in the negative by the examiner except in one immaterial instance and the entire detailed report is a confirmation upon examination by the plaintiff's medical examiner of the representations made by the applicant.

The plaintiff contends that the insured's statement that he was in good health was false and untrue and that the policy never became effective because of the applicant's violation of the condition precedent that the insured be in good health at the time of the delivery of the policy and the payment of the first premium. The defendant contends that there was no violation of the truth by the insured, that there is no proof of his prior knowledge of any tubercular disease, that there is no proof that his health was other than good, and there is no proof of a change in the insured's health between the date of his application on April 10, 1953, and the date of the delivery of the policy on April 17, 1953. Thus it is argued the condition precedent of good health was met, and accordingly the policy was valid and effective at the death of the insured,

The first cause of action was dismissed at the close of all the evidence for lack of any proof of fraud or falsity or misrepresentation (Civ. Prac. Act, § 457-a). Nor was there any proof of any kind of knowledge of bad health directly or to be inferred from signs or symptoms.

The health clause in the application requires interpretation in the circumstances on the facts as found. " Good health " as commonly understood does not mean " perfect health " as it is understood by the pathologist for it does not imply total freedom from prior infirmity or tendency to disease. It means generally the absence of any vice or disease in the constitution of a serious nature or having a direct tendency to shorten life (Vance on Insurance [3d ed.], § 102, p. 642; Richard's on Law of Insurance, § 346). With little dissent the decisions are in agreement that the controlling factor is the insured's state of health and not his knowledge or belief of it. In an even more limited sense, many courts interpret this good health clause as operative only in the event of a change in health between the date of the application and the medical examination and the date of the delivery of the policy upon payment of the first premium (Vance on Insurance [3d ed.], § 102; 136 A. L. R. 1516, *et seq.*). The latter interpretation is established by long usage and acceptance as a guide by most life insurance companies in disposing of claims (Association of Life Insurance Counsel Proceedings, Vol. VI, 1934–1936, Buist M. Anderson, " State of Health as a Condition Precedent "). It was similarly interpreted in *Webster* v. *Columbian Nat. Life Ins. Co.* (131 App. Div. 837, affd. without opinion 196 N. Y. 523), and followed in *Chinery* v. *Metropolitan Life Ins. Co.* (112 Misc. 107). This was the holding more limited as to the insurer in *Eastern Dist. Piece Dye Works* v. *Travelers Ins. Co.* (198 App. Div. 610, 616, affd. 234 N. Y. 441), the court, by ·BLACKMAR, P. J., writing : " The clause prescribing as a condition to the validity of the policy, a state of good health at the time of the payment of the first premium, was meant to cover any *substantial* change between the date of the application and the payment of the first premium." (Emphasis supplied.) Where preliminary to issue and delivery of a policy the insurer has obtained a medical examination of the insured, the sound health provision has been held to apply only to such an impairment of the insured's health as may have arisen in the interval between the time of the medical examination and the time of the issuance of the policy (see 45 C. J. S., Insurance, § 602, n. 75).

There is no proof in this case of any change in the insured's health nor has the plaintiff met the burden of showing bad or unsound health and the plaintiff's case must fall. According to the evidence and on the law as stated by controlling judicial authority, the defendant is entitled to prevail on her counterclaim.

The foregoing is the decision of the court required by the Civil Practice Act upon which the defendant may enter judgment dismissing the complaint and have judgment for the relief demanded by the counterclaim, with costs.