Syllabus.

# Richmond.

## New York Life Insurance Co. v. Franklin.

### January 13, 1916.

### Absent, Cardwell, J.

1. APPEAL AND ERROR—*Petition—Assignment of Errors—Limitation of Actions.*—The discussion in a petition for a writ of error may be treated as a substantial compliance with the statute requiring errors to be assigned in the petition, when the motion to dismiss for failure to comply with the statute is not made until after the right of appeal is barred by limitation.

2. LIFE INSURANCE—*Good Health—Case at Bar—Question for Jury.*—The evidence in the case at bar, taken as a whole, raises a question proper for submission to a jury as to whether the assured understood and believed from what passed between him and the physician consulted there was anything seriously wrong with his health.

3. LIFE INSURANCE—*Antedating Policy—Contracts.*—In the absence of fraud or imposition, there is no essential illegality in antedating life insurance policies, that is, making them, for the purpose of fixing maturity dates for premiums, relate back to and take effect as of a time prior to their delivery, and parties who enter into such contracts are bound by their terms.

4. LIFE INSURANCE—*Policy—Date for Paying Premiums—Parol Evidence.*—Parol evidence is admissible in cases based on insurance policies, as in those based on other written contracts, to explain ambiguous terms, and the courts are disposed to be especially liberal in this respect in dealing with such insurance contracts, but such evidence cannot be received to vary the express terms of a policy. In the absence of fraud or mistake the written or printed policy is the best and only admissible evidence of what the contract between the parties is as to all matters it purports to cover. It is not permissible to show by parol contemporaneous evidence a different date for the payment of premiums from that expressly stated in the policy.

5. LIFE INSURANCE—*"Consulting a Physician"—Case at Bar—Question for Jury.*—What constitutes "consulting a physician" within the meaning of an application for life insurance depends upon the character of the interview. In the case at bar the assured was called up over the telephone by the physician at the instance of as-

sured's wife and asked to come to his office, which he did and the physician examined him.   Whether or not this constituted "consulting a physician" was a question for the jury, who should have been instructed as to the legal meaning of "consulting a physician."

6.   LIFE INSURANCE—*Application—Good Faith—Code, Section 3344-a— Case at Bar.*—Good faith and substantial truth are all that can be required of the insured in applications for life insurance, and it was not error under the evidence in the case at bar to instruct the jury that if they believed from the evidence "the defendant company accepted and received the application for reinstatement and executed its receipt therefor, you shall find for the plaintiff, unless you believe that it has been proven by a preponderance of the evidence that the answers in such application were wilfully false or fraudulently made, or that they were material."   The instruction is in accord with section 3344-a of the Code and with section 28, chapter 2, of the general insurance act of March 9, 1906 (Acts 1906, p. 139).

7.   EVIDENCE—*Life Insurance—Private Dealings Between Subagent of Insurance Company and Assured.*—Strictly personal and private dealings between a subagent of an insurance company and the assured, relating to the payment of premiums, made without any knowledge of or authority from the insurance company, are not admissible in evidence in an action by the beneficiary against the insurance company.

Error to a judgment of the Corporation Court of the city of Roanoke in a proceeding by motion for a judgment for money. Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

*Kime, Fox & McNulty,* for the plaintiff in error.

*A. P. Staples, Jr.,* and *A. B. Hunt,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This writ of error brings up for review a judgment against the New York Life Insurance Company in favor of Mary M. Franklin for the amount of a policy on the life of her husband, Thomas A. Franklin.

A preliminary question arises upon a motion by defendant in error to dismiss the writ as improvidently awarded, on the ground that the petition contains no sufficient assignment of error, and is, therefore, violative of section 3464 of the Code. The motion is not without merit, for the petition does not in any very concise or satisfactory manner point out the precise grounds upon which it seeks a reversal of the judgment. We think, however, that the discussion in the petition may be treated as a substantial compliance with the statute, in view of the fact that the right of appeal is now, and was at the time the motion was first called to our attention, barred by limitation. See *Orr* v. *Pennington,* 93 Va. 268, 270, 24 S. E. 928.

The insured, Thomas A. Franklin, was a man of intelligence and education. On November 2, 1912, he signed a formal application for the policy in suit. This policy was dated November 2, 1912, and was delivered to him December 9, 1912, at which last-named date the amount of one semi-annual premium was paid. The policy contains, among others, the following provisions: "This contract is made in consideration of the first premium of forty-seven 88/100 dollars, the receipt of which is hereby acknowledged, constituting payment for the period terminating on the second day of May in the year nineteen hundred and thirteen, and the payment of a like sum on said date and on the second day of November and May in every year thereafter during the continuance of this policy, until premiums shall have been paid for twenty full years from November 2nd nineteen hundred and twelve or until the prior death of the insured . . . After delivery of this policy to the insured, it takes effect as of the 2nd day of November nineteen hundred and twelve." These provisions appear conspicuously and in large type on the face of the policy. They are in no way in conflict with the application. The words, "policy written and premium payable semi-annually," relied upon by counsel for defendant in error to show an ambiguity, can have no such effect. These words were not printed in the original

form of the application, but were evidently stamped upon it by the company after the policy had been written, and could have had no influence upon the insured. The application, although attached to, is not made a part of the policy. Upon the contrary, it is expressly provided that the latter "constitutes the entire contract between the parties, and no agent is authorized to waive forfeitures or to make, modify or discharge contracts, or to extend the time for paying a premium." Further pertinent provisions were that "the payment of a premium shall not maintain the policy in force beyond the date when the next payment is due," except as thereinafter provided, and that "a grace of one month, subject to an interest charge of five *per centum per annum,* will be allowed for the payment of every premium after the first, during which time the insurance shall continue in force."

The second premium, due by the face of the policy on May 2, 1913, was not paid then nor until after the expiration of the grace period of thirty days, and the policy, under its plain and unambiguous terms lapsed accordingly. This fact had been called to Franklin's attention on or about June 15th, and he promptly and without question recognized his default and proceeded to apply in writing for reinstatement under clause 9 of the policy, which was as follows: *"Reinstatement.* At any time after any default, upon written application by the insured and upon presentation at the home office of evidence of insurability satisfactory to the company, this policy may be reinstated, together with any indebtedness in accordance with the loan provisions of the policy, upon payment of arrears of premiums with interest thereon at the rate of five *per centum per annum."*

The application for reinstatement was given to him in blank on the 15th of June, was carried off by him and returned on the 18th, duly filled out and signed in his own hand. This paper contained a number of questions to and answers by the applicant. Following these questions and answers and immediately over the signature is a statement of which the following is a part:

"I declare   .   .   .   that I made each and all of the fore-going answers.   .   .   .   Said answers, each and all, are and I warrant them to be full, complete and true.   I have made said answers for the purpose of inducing the New York Life Insurance Company to reinstate my said policy, and I under-stand that they are material to the risk, and that said company will, and I hereby agree that it shall rely and act solely upon my said answers in passing upon my application for the rein-statement of said policy, which lapsed for a non-payment of premium due on the 2nd day of May, 1913, and is not now in force, except as may be provided by its non-forfeiture pro-visions.

"I further agree that said policy shall not be deemed rein-stated by reason of any cash paid, or settlement made in connec-tion with this application, or otherwise, unless and until said company at its home office in acting upon this application shall have duly reinstated said policy during my lifetime and good health."

Among the questions asked and answered referred to above were the following:

"What illness, if any, have you had since the date of the above policy?   (Ans.) None.   What was the nature of each illness, its date and duration?   (Ans.) None.   What physi-cians have treated you, or have you consulted since the date of the above policy?   (Ans.) None.   Are you now in sound health?   (Ans.) Yes."

Franklin died on the 17th day of July, 1913, of a compli-cation of diseases, one of which was nephritis.   On the 4th day of April, 1913, Dr. H. E. Jones examined him and found evi-dences which caused him to suspect nephritis.   This examina-tion was made at the request of Franklin's wife who had telephoned to Dr. Jones that her husband was not well.   She requested that he arrange an interview with Franklin, which he did by telephoning the latter and having him come and sub-mit to an examination.   It does not appear that Dr. Jones ad-

vised him as to the probable consequences of the disease which he suspected; the examination was only partial; it is not sure that he then had the disease; he declined to be treated, and left the impression on Dr. Jones that he did not think he was sick. Without undertaking to set out all the evidence bearing directly and indirectly upon this examination and interview, it must suffice to say that, taking it as a whole, the evidence upon this point raises a question proper for submission to a jury as to whether Franklin understood or believed from what passed between him and the physician that there was anything seriously wrong with his health. The pertinency of this fact will hereinafter appear.

The first question which we shall dispose of arises out of the contention by the defendant in error that, notwithstanding the terms of the contract, the effect of the first payment of the semi-annual premium was to keep the policy in force for a full period of seven months (counting the grace period of one month), from the date of the policy. This question turns upon the power of an insurance company to "antedate" its policies— that is, to make them, for the purpose of fixing maturity dates for premiums, relate back to and take effect as of a time prior to their delivery. There is manifestly no essential illegality in such contracts, and we have no hesitancy in deciding that parties who, without being subjected to any fraud or imposition, enter into them, will be bound by their terms. In this case the contract distinctly made the second premium fall due on May 2, 1912. There was no evidence of any deception or fraud practiced upon Franklin. This, we think, is affirmatively and conclusively shown by his unhesitating and uncomplaining preparation and signature of the application for reinstatement.

Counsel for defendant in error rely strongly upon the case of *McMaster* v. *N. Y. Life Ins. Co.,* 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64, wherein it was held that the payment of an annual premium upon five policies delivered after their date kept

them in force for thirteen months (including one month grace) from·their delivery. That case was materially different in its facts from this one. There the original applications were parts of the policies, and the two when read together contained an ambiguity which opened the way for parol testimony and·for the application of rules of construction. Here, the policy alone embodies the contract between the parties and is entirely free from any uncertainty in its terms. There was no provision in that case, as in this, expressly making the policy take effect as of a definite date prior to its delivery. McMaster's conduct and statements after the alleged lapse had occurred showed that he thought the policies were still in force. Franklin stated deliberately and in writing that his policy had lapsed on May 2, 1913.·

- ·The witness, Overstreet, who acted for W. K. Davis, the company's agent, in all the negotiations with Franklin, testified that he thought he had explained the policy to Franklin and had told him that it would remain in force for seven months, including the grace period, from the "time of the first payment, but this evidence was objected to and should have been excluded on the ground that there were no circumstances which warranted the introduction of parol testimony to contradict the terms·of the policy.

Parol evidence is admissible in cases based on insurance policies, as in those based on other written contracts, to explain ambiguous terms, and the courts are disposed to be especially liberal in this respect in dealing with the former class of contracts. But the case in hand affords no just ground upon which to permit parol evidence to explain the intention of the parties. Applying to this evidence, as we properly may, what Judge Buchanan said in *Metropolitan Life Ins. Co.* v. *Hall,* 104 Va. 572, 575, 52 S. E. 345, 346, "this understanding or agreement was in conflict with the express terms of the policy, and could not be proved under the well-settled rule that contemporaneous

parol evidence is not admissible to contradict or vary the terms
of a written contract. *Towner* v. *Lucas*, 13 Gratt. (54 Va.)
705; *Catt* v. *Olivier*, 98 Va. 580, 36 S. E. 980."

"*Policy best evidence.* In the absence of fraud or mutual
mistake, the written contract, if there be one, is the best and
only admissible evidence of what the contract is as to all mat-
ters which it purports to cover." Richards on Insurance (3d
Ed.), sec 85. See, also, to same effect; *Thompson* v. *Ins. Co.,*
104 U. S. 252, 26 L. Ed. 765; *Northern Assur. Co.* v. *Grand
View Bldg. Assn.,* 183 U. S. 308, 318, 22 Sup. Ct. 133, 46 L.
Ed. 213, decided shortly after the *McMaster case, supra,* and
reviewing at length many authorities.

It was error to admit this testimony by Overstreet and to
instruct the jury, as was done by instruction number 1 for de-
fendant in error, that upon such evidence they might find that
the policy remained in force for seven months after the pay-
ment of the first premium.

The next question to be disposed of grows out of the con-
tention on behalf of the defendant in error that what trans-
pired between Thomas A. Franklin and Dr. Jones did not
amount to consulting a physician within the meaning of the
question and answer appearing in the application for reinstate-
ment. Under the rule adopted in this State and supported by
what seem to us to be the better considered authorities from
other jurisdictions, "consulting a physician" within the mean-
ing of an application for life insurance depends upon the char-
acter of the interview. *Modern Woodmen* v. *Lawson,* 110 Va.
81, 86, 65 S. E. 509, 135 Am. St. Rep. 927; *Cole* v. *Mutual
Life Ins. Co.,* 129 La. 704, 56 South. 645, 27 Ann. Cas.
(1913 B) 748, and cases cited in note to *Met. L. Ins. Co.* v.
*Brubaker,* 18 L. R. A. (N. S.) at page 365. This rule finds
its foundation in the favorable construction always accorded to
the insured, and the generally recognized principle that good
faith and substantial truth are all that can be required of the
insured in applications for insurance. If, therefore, it could

be regarded under the evidence as beyond fair debate that Franklin understood from Dr. Jones that his symptoms were serious and indicated a malady which involved real impairment of his health or might affect his longevity, then as a matter of law resulting from this undisputed fact, this court could say, and the lower court should have said, if asked to do so, that there could be no recovery. But in the state of the evidence upon this point we think the question was one for the jury to determine. We are, therefore, of opinion that the objection to instruction No. 2, given for defendant in error, as urged in the petition and briefs of plaintiff in error, is not well taken. The instruction was in accord with section 3344-a of the Code and section 28 of chapter 2 of the general insurance act of March 9, 1906 (Acts 1906, p. 139; Pollard's Code Supp. 1910, p. 602), which we think applicable under the evidence in this case.

The instruction was as follows: "The court instructs the jury that even though you may believe from the evidence that the payment of the second premium on the policy sued on was not made while the policy was in full force and effect, yet, if you believe from the evidence that the defendant company accepted and received the application for reinstatement and executed its receipt in payment therefor, you shall find for the plaintiff, unless you believe that it has been proven by a preponderance of the evidence that the answers in such application were wilfully false or fraudulently made, or that they were material."

We deem it proper to add, however, inasmuch as this case may be tried again, that it would have been better to incorporate in the instruction an explanation of what consulting a physician legally means in a case like this, as indicated in this opinion and in the *Lawson Case, supra,* as well as the import of the words "sound health," as indicated in *Greenwood* v. *Royal Neighbors of America, ante,* p. 329, 87 S. E. 581, the opinion in which is handed down at the same time with this one.

The trial court admitted, over the objection of plaintiff in error, testimony regarding certain notes given by the insured to Overstreet, the subagent above mentioned, to be used in connection with the payment of premiums. This was clearly erroneous. The evidence in the case leaves no room to doubt that these were strictly personal and private dealings without any knowledge by or authority from the insurance company.

For the errors pointed out in this opinion, the judgment will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*