## CAMPBELL v MONUMENTAL LIFE INSURANCE COMPANY

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3100. Decided Feb. 28, 1940

Hamilton, Kramer & Wiles, Columbus, for plaintiff-appellee.

Vorys, Sater, Seymour & Pease, Columbus, for defendant-appellant.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in favor of the plaintiff.

The action was to recover on a policy of insurance in which the plaintiff was named beneficiary, issued May 29, 1937, on the life of Myra L. Campbell, who died July 19, 1937.

Issues were joined and the cause tried to a jury. Plaintiff made the necessary prima facie proof on her cause of action and rested. Defendant then offered its testimony in support of two affirmative defenses designated second and third defense in its answer. The second defense alleged a breach of

a condition precedent of the policy of insurance that it would not be in effect as a contract unless at the time of its delivery the insured was in sound health. The third defense asserted that the policy of insurance should be voided because of a breach of a clause of the policy, which, in so far as germane, provided that:

"If within two years prior to the date of the issue of this policy the insured has been * * * attended by a physician, unless it be shown by the insured or any claimant that no such * * * medical treatment or attention was for a serious disease, * * * unless reference to such * * * medical treatment or attention, * * *, is endorsed on this policy by the company. * * *."

The defense consisted of the testimony of two witnesses, an agent of the company who took the application for the policy here under consideration and Dr. John J. Colletta, a physician who had attended the insured professionally. The agent identified a paper marked as Defendant's Exhibit 1, handed to him, as the application for insurance which he took from the insured and her signature thereon which testimony was received over objection. It appears that the application was not attached to the policy and a copy had not been returned to the insured. Dr. Colletta then took the stand and over objection answered questions to the effect that he had attended the insured professionally on two occasions, February 23 and March 19, 1937, whereupon the defendant offered its Exhibit 1, for the sole purpose of showing a waiver on the part of the insured and a consent to the testimony of Dr. Colletta. The Court, over objection, admitted the exhibit for the purpose for which it was tendered and deferred action on a motion of plaintiff that the entire application be admitted in evidence.

Dr. Colletta then testified at length and in detail respecting his examination, diagnosis, treatment of and advice to his patient, the insured, none of which would have been admissible

because privileged communications, under §11494 GC but for the waiver in the application. The provision bound the insured and those who might claim under her to a waiver of all rights accorded them by §11494 GC.

Dr. Colletta's testimony tended to establish both the second and third defenses of the answer.

Plaintiff in rebuttal offered several witnesses whose testimony was in contradiction of Dr. Colletta and tended to deny the claims that the insured was not in sound health when the policy was delivered and that she had been attended by a physician for a serious disease at the times fixed by Dr. Colletta. Plaintiff also offered the entire application of the insured for the policy of insurance sued upon which was admitted over objection.

The Trial Judge submitted the case to the jury upon the one issue drawn by the third defense of the Answer and the Reply thereto. The Court charged as follows:

"* * * the issue is whether or not the insured, * * *, within two years prior to the date of the issuance of said policy had been attended by a physician for a serious physical condition and that no reference to said attendance was endorsed on the policy."

The burden of proof as to this defense was put upon the defendant against its claim that when it appeared, that the insured had been attended by a physician, the burden of proving that such attendance was not for a serious condition was upon the plaintiff.

A special interrogatory was submitted to the jury—was Myra Campbell attended by Dr. Colletta for a serious physical condition in March of 1937, which was answered, "No".

Defendant moved for a directed verdict at the close of all of the testimony, for a new trial and for judgment notwithstanding the verdict, all of which were overruled and judgment entered on the verdict.

In passing on the motions after verdict the trial judge handed down three written decisions with which we have been favored. He reached the conclusion that he had erred in accepting the testimony of Dr. Colletta for the purpose of establishing the third defense of the answer, because of §9389 GC, in connection with the answer to a question in the application. The question was, Have you ever had or been treated for (then follow nineteen specific diseases) or any disease or injury? which was answered, No. With this testimony removed from the record there was no support for the third defense of the answer.

The assignments of error of which there are four are more general than the headings in the brief of defendant stating its claims of error. We follow questions presented and discussed in the brief, though not necessarily in the same order.

IS THE JUDGMENT CONTRARY TO LAW OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

We first consider whether the plaintiff had the right to go to the jury at the conclusion of the testimony assuming that the Court properly admitted all of the evidence found in the record.

Upon this question it is the claim of defendant that the issue whether or not plaintiff had been attended within two years prior to the issuance of the policy by a physician for a serious physical condition must be resolved in its favor because of the testimony of Dr. Colletta. It is urged that the evidence of probative effect on the issue must be in the field of the expert and that, therefore, Dr. Colletta stands undenied and uncontradicted. Citing Magyar, Admx. v Ins. Co., 133 Oh St 563, where also is found Nida v Ins. Co.

In the Magyar case three physicians undeniably had diagnosed the disease with which the insured was suffering and so testified. As against this were statements of laymen to the effect that the insured looked or appeared in good health or that she was in good health.

In the Nida case one physician testified that he called on the insured on two certain dates in July and on the 8th and 16th of August and that he was suffering from a serious disease. Three witnesses said that the physician had attended the insured but once, viz. August 18th, a short time before his death and that he had not theretofore been sick. In the Magyar case the court held that the defense of the insurance company was established as a matter of law, but that in the Nida case there was a jury question. Obviously our facts do not fall clearly within the limits of either of the cited cases but we can get some light from the opinion.

We shall not undertake to analyze the testimony of Dr. Colletta in detail, because it is too extended, but point out a few of the reasons why reasonable minds might have differed as to the probative effect of what he said. The jury found that Dr. Colletta had not treated the insured for a serious disease on the 19th of March, 1938, in the face of his positive statements that, although she was in the midst of menstruation, he had examined the insured thoroughly on said date and found pelvic pain, backache, uterine tumor, uterus enlarged three times usual size, foul discharge, a mass about the size of a small orange in each lateral quadrant on both sides of the uterus, metritus and salpingitis and advised surgery. If this was true the jury could not have answered the interrogatory as it did. It follows that the jury found it to be untrue. It had this right, if a fair consideration of the record will support it.

What were some of the developments which tended to discredit and weaken the testimony of Dr. Colletta. He was first called to see the insured on the late afternoon of February 23, 1937, at her home. He came several hours after he was requested to call. There were present besides the doctor and the insured, a Mrs. Iannarino and Mrs. Calvert, sister of the insured. It is testified that the insured had on the night before the physician's call eaten a

number of hot dogs and was complaining of pain in the abdomen and diarrhea. The doctor says that he thoroughly examined manually the abdomen and the tubular area—meaning probably, the Fallopian tubes—and made a diagnosis of acute gastronephritis and hemorrhagic salpingitis, and it was so noted on his card file, a condition which he said was not serious. He admits that plaintiff was menstruating at the time of the examination. Both of the women who were present while the physician was with the patient say that he examined her not at all, only touching her to take her temperature and that he said as he left, in substance, that there was nothing the matter but an old fashioned case of diarrhea.

The next observation of the patient according to the doctor was on the 19th of March at which time he again put her upon the table, examined her thoroughly for some fifteen minutes, depending however upon manual manipulations and his sense of sight and hearing only and without the aid of any instrument whereby he could make internal exploration and without any test of urine or blood. The result of this examination has been stated heretofore.

Mrs. Calvert testifies to a state of facts which, if true, renders doubtful if Dr. Colletta could have examined the insured on the 19th of March in the manner, for the time and to the extent to which he testifies. The doctor says that the insured again called at his office on the 6th of July, that he found her in a serious condition and advised that she go to the hospital which she did that day. Mrs. Calvert says that it was she who called at Dr. Colletta's office and that he said to take the insured to the hospital to find out what was the matter with her. Finally, Doctor Colletta says that he called professionally on the insured at the hospital on the 18th of July, 1937, and again examined her and found her in a dying condition. She died the next day. Mrs. Calvert testifies that the doctor did not examine the insured at the hospital.

The cause of death appearing in the Death Certificate is General Peritonitis. Contributing cause, "Sub-total hysterectomy for infected uterus. Cause unknown."

The employer of the insured testified that with one exception the occasion of her illness of February, 1937, the insured worked every day at her employment as a waitress; that she was well and cheerful. Several witnesses testified that she had not been sick, had not complained, was cheerful, danced. It appeared that on the 4th day of July she, with friends, had been to Buckeye Lake, came home, on the 5th was not feeling well and on the 6th went into the hospital.

It also appeared that Doctor Colletta was paid $50.00 by the defendant for his time while in attendance as a witness. There are many other circumstances in the record which could very properly have caused the jury to scrutinize the testimony of Dr. Colletta with much care. We are satisfied that upon his own testimony, and █ certainly in connection with plaintiff's witnesses, the jury had the right to pass upon the issue raised by the third defense of the answer and to find against the defendant on it. The factual developments bring the case more properly under the principle announced in Nida v Insurance Co. than under Magyar v Insurance Co., supra.

## CLAUSE WAIVING BENEFIT OF PRIVILEGED COMMUNICATIONS.

The waiver did not make the testimony of Dr. Colletta competent. It was not a part of the contract and could not be invoked by the defendant company. The contract which the company prepared provided on the first page thereof,

"The contents of this page and the succeeding pages of this policy and the benefits, conditions and values set forth thereon constitute the entire contract between the parties hereto."

It is the policy and the express provision of the law in Ohio that the application shall be attached to and become a part of the policy. The obligation to attach the application to the policy is enjoined upon the company. By specific terms the Code, §9420 GC provides that in policies other than standard forms no policy of life insurance * * * shall be issued or delivered in this state * * * unless the same shall contain the following provisions, (3) A provision that the policy and the application therefor, a copy of which must be endorsed thereon, shall constitute the entire contract between the parties * * *. The policy itself provided:

"Any provision of this policy which is in conflict with any law to which the policy is subject is understood to be amended to conform thereto."

Thus, by its own contract and by the law under which it was operating in this state, the duty was enjoined upon this company to attach a copy of the application to the policy when issued. The provision of the statute to which we have just been directing our attention is separate and apart from §9389 GC, which also provides:

"Every company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a full and complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects so to do so long as it is in default for such copy, shall be estopped from denying the truth of any such application or other document."

The company failed again to observe the express letter of this statute. The purpose of these statutes is plain. It is to bring home to the insured all the questions put to her and answers made by her in her application and to apprise her of the fact that all of these become a part of the contract by which she must be bound.

The company in this case inserted in the application the waiver, the purpose and effect of which is to relieve the defendant company, not only from its obligation to observe the privileged communications statute as it relates to the application, but, also, as it affects any term of the policy. Obviously such a provision which the company knowingly fails to make a part of the contract of insurance should not be permitted to be used for the benefit of that company in defending under the terms of said contract.

"In the absence of statute to the contrary, an application for insurance · is admissible in evidence in an action on the policy, if it is made a part of the policy or contract; otherwise it is not admissible, * * *" 33 C. J. 113. "Where an application is not part of the contract it cannot be considered." 32 C. J. 1160, Breeden v Western & Southern Life Insurance Company (Ky.) 146 S. W., 1104; Western & Southern Life Insurance Company v Galvin (Ky.) 68 S. W. 655; N. Y. Life Ins. Co. v Franklin (Va.) 87 S. E. 584. The application being no part of the policy the defendant did not have the right to use the waiver to support the admissibility of the testimony of Dr. Colletta. Without the testimony of Dr. Colletta there was no defense to the plaintiff's case in chief.

**Headnote 2**

THE ADMISSIBILITY AND EFFECT OF THE TESTIMONY OF DOCTOR COLLETTA.

It is urged that the defendant had the right to introduce the waiver under the application but that it was prejudicially erroneous for the. court to admit the other subject matter contained in said application, and, further that the court erred in giving application to the provisions of §9389 GC to meet the defense that the insured was attended by a physician for a serious physical disease. If any part of the application was admissible for the

defendant, all of it was competent on behalf of the plaintiff.

We have in two cases, at least, **Mutual Life Ins. Co. v Connell, 43 Oh Ap 415** and **McReynolds v Washington National Ins. Co., 27 Abs 316,** held that a defense such as asserted here may be made by the company although it has failed to return a copy of the application to the insured. To like effect, **Western & Southern Life Ins. Co. v Bennett, 45 Oh Ap 498.**

The court in **John Hancock Mutual Life Ins. Co. v Luzio, 123 Oh St 616,** and **Metropolitan Life Ins. Co. v Howell, 62 Oh St 204,** makes distinction between the right of a company to urge the express conditions of clauses in its policy as distinguished from a defense based upon material representations in the application. In this case the company may assert and prove ▇▇▇▇ its third defense without respect to its failure to return the application wherein the insured by her answers to a question had stated that she had not been attended for any serious disease within two years prior to the application. An estoppel against the company asserting this material representation in ▇▇▇▇ the application to be untrue did not preclude the setting up of a clause in the policy containing the same language as that employed in the application.

If Doctor Colletta had been competent as a witness we would hold that his testimony, if accepted as true, would have provided full support for the third defense of the answer.

The judgment will be affirmed.

GEIGER & BARNES, JJ., concur.