## COMBS v. EQUITABLE LIFE INS. CO. OF IOWA.

### No. 4761.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

F. H. Combs, of Grundy, Va., and Horace Sutherland, of Galax, Va., for appellant.

John L. Walker, of Roanoke, Va. (Leonard G. Muse and Woods, Chitwood, Coxe, Rogers & Muse, all of Roanoke, Va., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

SOPER, Circuit Judge.

This case comes before the court on the appeal of the plaintiff in the District Court from a judgment for the defendant in an action on a policy of life insurance upon the life of Dewey O. Combs. On April 5, 1938, the insured, a senior at the Virginia Polytechnic Institute at Blacksburg, Virginia, signed an application for a policy of insurance with the defendant company in the amount of $5,000. The same day he was examined by a medical examiner of the company. In answer to a question in the application Combs stated that he had never suffered from any ailment or disease of the heart and lungs. Upon the basis of this information and the usual medical examination, the application was approved and forwarded to the home office.

The application contained, amongst others, the following provisions:

"I agree: (1) that if the entire first premium stipulated in the policy contract issued for the insurance hereby applied for is paid to the company or its agent at the time of making this application and such settlement is shown herein and the receipt therefor which is attached to this application is delivered to me by the agent, then if the company after investigation and medical examination, shall be satisfied that at the time of said medical examination, I was insurable and entitled under the company's rules and standards to the insurance on the plan and for the amount applied for, the insurance shall take effect as of the date of said medical examination; (2) that if the entire first premium stipulated in the policy contract issued for the insurance hereby applied for is not paid to the company or its agent at the time of making this application, or if the policy contract be issued other than as applied for, either by an adjustment in the amount, plan, or premium, the company shall incur no liability under the policy issued until said policy is delivered to me and the entire first premium therefor is actually paid while I am in good health, and then only if I have not consulted or been treated by any physician since the date of the medical examination for this policy, and if so delivered, said policy shall be deemed to have taken effect as of its date of issue."

Combs did not pay the first premium at the time he made the application, and it is admitted that the policy did not become effective before delivery.

The company approved the application and sent a policy dated April 9, 1938, with the application attached as part thereof, to the soliciting agent; and the agent delivered the documents to Combs on April 22, 1938, who then paid the first premium. In the meantime, on April 14, 1938, Combs visited Catawba Sanitorium, Virginia, where he consulted a chest specialist. The doctor made a thorough examination and found that Combs was suffering and for a long period had suffered from moderately severe chronic bronchiectasis, a disease of the lungs which is incurable if, as in Combs' case, both lungs are affected. This malady, though not of itself fatal, renders the patient more susceptible to bronchial pneumonia. The doctor at the sanitorium urged Combs to secure work in a warm dry climate after his graduation in June. He wrote a letter to a doctor in Blacksburg containing a detailed report of his findings and conclusions, and sent a copy to Combs to remind him of the advice that had been given to him. Combs' condition was the same on April 14, when he was examined at the sanitorium, as it had been on April 5, when he made application for the insurance. He was suffering from the same disease on both dates.

At the time of the delivery of the policy the soliciting agent knew that Combs had had the examination at the sanitorium, but the agent did not know the result of the examination because he had been told by Combs that the doctors did not find anything wrong with him. If the company had been told that Combs had bronchiectasis, it would not have issued the policy.

There is nothing in the record to show that Combs knew that he was suffering from bronchiectasis when he applied for the policy and was examined by the company's doctor. He subsequently went to the Catawba Sanitorium because one of his professors suspected that he had tuberculosis. When Combs received the report from the sanitorium he was elated to find that he did not have tuberculosis. But the professor was not satisfied, and persuaded Combs early in May to go to the University of Virginia Hospital at Charlottesville where he was

examined by two doctors who verified the earlier diagnosis. On May 22, 1938, Combs died of bronchial pneumonia and bronchiectasis. After his death the defendant refused payment on the policy and tendered a refund of the premium to the plaintiff, the beneficiary named therein, but this settlement was refused and the present action was brought.

The company defended on the ground that the policy never became effective for the reasons (1) that Combs was not in good health when the policy was delivered to him and the first premium was paid, and (2) that Combs had consulted a physician between the date of the medical examination by the company's doctor and the delivery of the policy. To meet this defense the plaintiff contended (1) that the good health and interim consultation provisions of the application did not prevent the policy from becoming effective because there was no change in the state of Combs' health between the making of the application and the delivery of the policy; and (2) that these provisions of the contract were waived by the defendant by the delivery of the policy by the soliciting agent with knowledge of Combs' medical examination at the Catawba Sanitorium.

The District Judge, before whom the case was tried without a jury, found the facts as above set out and ruled against the plaintiff on both points. He held that under the Virginia law the good health and interim consultation provisions were conditions precedent to the insurance contract, and that the insured had failed to fulfill them. The judge also ruled that there was no waiver of these conditions (1) because the company's representative did not have full knowledge of the facts, and (2) because such a waiver was beyond the scope of the authority of the soliciting agent. Judgment was therefore given for the defendant. D.C., 34 F.Supp. 1002.

There are many cases in which a good health clause in a life insurance contract, similar to that in the policy in suit, is construed literally to mean what it says, that liability is not incurred by the insurer unless the applicant for insurance is in good health upon the delivery of the policy; and if bad health at that time is shown in a subsequent suit upon the policy, this interpretation is given, even though the applicant believed himself to be in good health at the time of his application and the company satisfied itself by medical examination that he was insurable, and no subsequent change in his condition took place prior to the delivery of the policy. The reason for the rule is that the liability of the insurer has been limited by the terms of the contract, and both parties are bound thereby. [1]

On the other hand, there is a respectable body of authority for the rule that if there has been no fraud or misrepresentation on the part of the applicant, and he has been subjected to a medical examination by the company and has been accepted as a satisfactory risk, the good health clause must be interpreted to refer only to changes in health occurring between the examination and delivery of the policy. The theory of these cases seems to be that by making the examination and passing the applicant, the company has waived all future contentions as to his health at or prior to the time of the examination, and he is justified in assuming, in the absence of fraud or misrepresentation on his part, that he has obtained a valid policy of insurance upon his life. [2]

[1] Gallant v. Metropolitan Life Ins. Co., 1896, 167 Mass. 79, 44 N.E. 1073; Barker v. Metropolitan Life Ins. Co., 1905, 188 Mass. 542, 74 N.E. 945; Packard v. Metropolitan Life Ins. Co., 1903, 72 N. H. 1, 54 A. 287; Karp v. Metropolitan Life Insurance Co., 1933, 86 N.H. 124, 164 A. 219; Murphy v. Metropolitan Life Ins. Co., 106 Minn. 112, 118 N.W. 355; Greenbaum v. Columbian Nat. Ins. Co., 2 Cir., 1932, 62 F.2d 56; Logan v. New York Life Ins. Co., 1919, 107 Wash. 253, 181 P. 906; Wright v. Federal Life Ins. Co., Tex.Com.App., 1923, 248 S.W. 325; Mutual Life Ins. Co. v. Willey, 1919, 133 Md. 665, 106 A. 163; Mohr v. Prudential Ins. Co. of America, 1911, 32 R.I. 177, 78 A. 554; Shaner v. West Coast Life Ins. Co., 10 Cir., 1934, 73 F.2d 681;

Gill v. Mutual Life Ins. Co., 8 Cir., 1933, 63 F.2d 967.

[2] Prudential Ins. Co. v. Kudoba, 1936, 323 Pa. 30, 186 A. 793; Johnson v. Royal Neighbors, 1912, 253 Ill. 570, 97 N.E. 1084; Lewandowski v. Western & Southern Life Ins. Co., 1926, 241 Ill. App. 55; Prudential Ins. Co. v. Hodge's Adm'x, 1929, 232 Ky. 44, 22 S.W.2d 435; Metropolitan Life Ins. Co. v. Moore, 1904, 117 Ky. 651, 79 S.W. 219; National Life & Acc. Ins. Co. v. Ware, 1934, 169 Okl. 618, 37 P.2d 905; Eastern D. P. Dye Works v. Travelers' Ins. Co., 1921, 198 App.Div. 610, 190 N.Y.S. 822; Webster v. Columbia Nat. Life Ins. Co., 1909, 131 App.Div. 837, 116 N.Y.S. 404, affirmed, 196 N.Y. 523, 89 N.E. 1114; Chinery v. Metropolitan Life Ins. Co.,

■ In the pending case we are bound by the Virginia decisions. Erie Railroad Co. v. Tompkins, 1937, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. There is no Virginia decision directly in point; but the decisions of the Supreme Court of the state in respect to the general rule to be followed in the interpretation of insurance policies, and the meaning to be given to the specific phrases, "good health" and "consulting a physician", indicate the construction that should be given to the policy in suit. In Kennard v. Travelers' Protective Ass'n, 1931, 157 Va. 153, 157, 159, 160 S.E. 38, the following appears: "* * * Policies of insurance in cases of doubt or ambiguity are to be construed liberally in favor of the assured, but they must be construed in accordance with their terms as are other contracts. Courts should not make uncertain that which is certain, and they cannot make contracts for the parties. Phoenix Ins. Co. v. Shulman Co., 125 Va. 281, 99 S.E. 602; Combs v. Hunt, 140 Va. 627, 125 S.E. 661 [37 A.L.R. 621]; Bawden v. American [Cent.] Ins. Co. 153 Va. 416, 150 S.E. 257. 'The province of construction lies wholly within the domain of ambiguity.' Hamilton v. Rathbone, 175 U.S. 414, 20 S.Ct. 155, 158, 44 L.Ed. 219. When a provision is too plain to be misunderstood, there is nothing to construe. Norfolk Motor Exchange v. Grubb, 152 Va. 471, 147 S.E. 214, 63 A.L.R. 310." 157 Va. 157, 160 S.E. 39.

"'Policies of insurance, as other contracts, should be construed "according to the ordinary sense and meaning of the terms employed, and, if they are clear and unambiguous, their terms are to be taken in the plain, ordinary, and popular sense". St. Paul Fire & Marine Ins. Co. v. Ruddy [8 Cir.] 299 F. 189, loc. cit. 193.' Callen v. Massachusetts Protective Ass'n [8 Cir.] 24 F.(2d) 694, 695." 157 Va. 159, 160 S.E. 40.

See, also, Indemnity Ins. Co. v. Jordan, 1932, 158 Va. 834, 838, 164 S.E. 539; Greenwood v. Royal Neighbors, 1916, 118 Va. 329, 333, 336, 87 S.E. 581, Ann.Cas.1918 D, 1002; New York Life Ins. Co. v. Franklin, 1916, 118 Va. 418, 419, 425, 87 S.E. 584; Flannagan v. Northwestern Mutual Ins. Co., 1929, 152 Va. 38, 73, 146 S.E. 353.

■■ Both phrases, "good health" and "consulting a physician", relate to the same subject matter, that is, the pathological condition of the insured. Both must be so construed as not to deprive the insured of the protection of the policy on account of some trivial ailment that does not really affect the risk undertaken by the insurer, but, subject to this limitation, both must be so construed as not to do violence to the meaning of the policy or require the insurer to carry a risk which the contract was designed to exclude. So we find in Virginia that the words "good health" in policies of insurance, do not mean "good health" in its literal sense, but in the sense in which they are used by the man in the street speaking of his physical condition.

"The phrase 'good health,' as used in its common and ordinary sense by a person speaking of his own condition, undoubtedly implies a state of health unimpaired by any serious malady of which the person himself is conscious. When one says he is in good health, he does not mean, and nobody understands him to mean, that he may not have a latent disease of which he is wholly unconscious. It is doubtless competent for a life insurance company, in its policies, to take the expression 'good health' out of its common meaning and make it exclude every disease, whether latent and unknown or not (assuming that any person would ever accept a policy of that kind), but it must do so in distinct and unmistakable language. The mere statement by a party that he fully warrants himself to be in good health is not sufficient.

"'Good health means apparent good health, without any ostensible, or known, or felt symptom of disorder, and does not exclude the existence of latent unknown defects.' May on Ins. § 295, p. 625." Greenwood v. Royal Neighbors, 1916, 118 Va. 329, 334, 87 S.E. 581, 583, Ann.Cas.1918D, 1002.

■ Similarly, the legal effect of a consultation with a physician under the Virginia decisions depends upon the nature of the consultation. If it concerns a serious disease, then there has been a "consultation" within the meaning of the term, but if medical advice is sought for some trivial dis-

1920, 112 Misc. 107, 182 N.Y.S. 555; Fidelity Mutual Life Ins. Co. v. Elmore, 1916, 111 Miss. 137, 71 So. 305; New York Life Ins. Co. v. Smith, 1922, 129 Miss. 544, 91 So. 456; New York Life Ins. Co. v. Rosso, 1929, 154 Miss. 196, 122 So. 382; Mutual Life Ins. Co. v. Frey, 9 Cir., 1934, 71 F.2d 259; Mutual Life Ins. Co. v. Hoffman, 1921, 77 Ind. App. 209, 133 N.E. 405; Mutual Life Ins. Co. v. Muckler, 1933, 143 Or. 327, 21 P.2d 804.

turbance, it has no legal effect upon the contractual relations of the insured and his insurer. In New York Life Ins. Co. v. Franklin, 1916, 118 Va. 418, 425, 426, 87 S.E. 584, 587, the court said:

"Under the rule adopted in this state and supported by what seems to us to be the better considered authorities from other jurisdictions, 'consulting a physician,' within the meaning of an application for life insurance, depends upon the character of the interview. Modern Woodmen v. Lawson, 110 Va. 81, 86, 65 S.E. 509, 135 Am.St.Rep. 927; Cole v. Mutual Life Ins. Co., 129 La. 704, 56 So. 645, Ann.Cas.1913B, 748; and cases cited in note to Metropolitan L. Ins. Co. v. Brubaker, 18 L.R.A.(N.S.) [at page] 365. This rule finds its foundation in the favorable construction always accorded to the insured, and the generally recognized principle that good faith and substantial truth are all that can be required of the insured in applications for insurance. If, therefore, it could be regarded under the evidence as beyond fair debate that Franklin understood from Dr. Jones that his symptoms were serious and indicated a malady which involved real impairment of his health or might affect his longevity, then, as a matter of law resulting from this undisputed fact, this court could say * * * there could be no recovery." See, also, Flannagan v. Northwestern Mutual Life Ins. Co., 1929, 152 Va. 38, 146 S.E. 353.

Applying these definitions to the policy in suit, it is manifest not only that Combs was not in good health at any time during his dealings with the Insurance Company, but also that he consulted a physician after he had passed the physical examination given by the company and before the delivery of the policy. Furthermore, he concealed his actual condition from the company's representative, for while the record does not show that he was aware of his infirmity when he answered the questions in the application, he knew the grave character of his illness when he received the report of his examination at the sanitorium, and, nevertheless, failed to disclose it to the company.

Under these circumstances, we have no doubt as to the correctness of the conclusions of the District Judge. The provisions of the application under consideration constituted conditions precedent to a liability on the contract, and as they were never fulfilled, the policy of insurance did not go into effect. See, Oliver v. Mutual Life Ins. Co., 1899, 97 Va. 134, 33 S.E. 536. We take this view as to the health clause in the policy, whether it be given a literal interpretation, or the interpretation more favorable to the insured which restricts its meaning to changes in health after the company's medical examination. The authorities which hold the latter rule make it conditional upon the absence of concealment or misrepresentation on the part of the insured. The Supreme Court of the United States emphasizes the duty of an applicant for insurance to inform the insurer fully as to changes in his physical condition seriously affecting his health after signing the application and before the delivery of the policy. In Stipcich v. Metropolitan Insurance Co., 1928, 277 U.S. 311, at pages 315, 316, 317, 48 S.Ct. 512, at page 513, 72 L.Ed. 895, the court said:

"An insurer may, of course, assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy. Where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure of the insured to divulge any later known changes in health may well not affect the policy. * * * But there is no contention here that the parties contracted exclusively on the basis of conditions at the time of the application. * * *

"Insurance policies are traditionally contracts uberrimæ fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. * * *

"Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. * * *

"But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of

fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, * * * or, if a policy has been issued, it has a valid defense to a suit upon it."

▮ The recital of facts in the cited case indicates that the insured discovered a serious change in his physical condition after signing the application, and it may be that the change did not actually occur until after the application was made. But the same principle must in fairness be applied when, with no change for the worse in bodily condition, the applicant learns for the first time after his examination that he is afflicted with an ailment that materially affects the risk. In this situation, as in the other, fair dealing requires him to make full disclosure before accepting the policy, because the condition under which the application was made has changed, and he is now aware of an infirmity of which he had no knowledge at the beginning.

▮ With respect to the condition as to interim consultation with a physician, the duty of the insured to make full disclosure is equally imperative; and the authorities are in substantial accord that such a consultation, which reveals a serious ailment, vitiates the policy whether or not there has been a change in the physical condition of the applicant after the application was made.[3]

The quoted provisions of the application for the policy in suit clearly distinguish between the liability of the company, which immediately arises when the first premium is paid at the time of making the application and the applicant passes the examination, and the deferment of liability until the delivery of the policy, when the first premium is not paid at the start. It is when the latter contingency occurs that the conditions precedent relating to good health and consultation with a physician attach, and the liability of the insurer is to be determined with reference to the condition of the insured at the time of the delivery. It would be a clear violation of the terms of the contract if the insured should be permitted to conceal a matter material to the risk, learned by him before delivery, and still recover the face of the policy.

▮ The plaintiff also contends that the company waived its right to insist upon the conditions in the policy, because the soliciting agent delivered the policy to Combs with knowledge that he had consulted a physician after the application. As to this argument, it is enough to say that the agent did not have sufficient knowledge to make a binding waiver, even if it be assumed that he had full authority to act for the company in the premises. He knew of the consultation with the physician, but he was told that it did not disclose "anything wrong" with the applicant. Had full disclosure been made, delivery of the policy would have been denied.

"To a just application of this doctrine [of waiver] it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts: of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it. * * * To permit such concealment, and yet to give to the action of the company the same effect as though no concealment were made, would tend to sanction a fraud on the part of the policy-holder, instead of protecting him against the commission of one by the company." Globe Mut. L. Insurance Co. v. Wolff, 1877, 95 U.S. 326, 333, 24 L. Ed. 387. See, also, Great Northern Life Ins. Co. v. Vince, 6 Cir., 1941, 118 F.2d 232; Metropolitan L. Ins. Co. v. Hart, 1934, 162 Va. 88, 173 S.E. 769; Virginia F. & M. Ins. Co. v. J. I. Case Threshing Mach. Co., 1907, 107 Va. 588, 59 S.E. 369, 122 Am.St. Rep. 875.

Affirmed.

---

[3] New York Life Ins. Co. v. Gresham, 1934, 170 Miss. 211, 154 So. 547; Polachek v. New York Life Ins. Co., 1934, 151 Misc. 172, 270 N.Y.S. 884; New York Life Ins. Co. v. Watkin, 1930, 229 App.Div. 211, 241 N.Y.S. 441, affirmed, 1931, 256 N.Y. 618, 177 N.E. 164; Goldman v. New York Life Ins. Co., 1934, 152 Misc. 289, 273 N.Y.S. 151; Hurt v. New York Life Ins. Co., 10 Cir., 1931, 51 F.2d 936; New York Life Ins. Co. v. Gist, 9 Cir., 1933, 63 F.2d 732; Jensen v. New York Life Ins. Co., 8 Cir., 1932, 59 F.2d 957; Subar v. New York Life Ins. Co., 6 Cir., 1932, 60 F.2d 239. Contra, Hungate v. New York Life Ins. Co., 1932, 267 Ill.App. 257.