850 F.2d 688
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary Grace CONDON, Plaintiff-Appellant,
v.
INTER-STATE ASSURANCE COMPANY, Defendant-Appellee.
 No. 87-3895.
 United States Court of Appeals, Fourth Circuit.
 June 20, 1988.
 
 David M. Zobel (Inman, Lee & Olivieri, P.C., on brief), for appellant.
 Peter C. Manson, Jr. (Pender & Coward, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Inter-State Assurance Co. sought a declaratory judgment against Mary Grace Condon as to whether the life insurance policy delivered to Bruce R. Condon on May 14, 1985 was in effect at the time of his death. The case was tried by a magistrate who ruled that the life insurance policy never took effect and that Mary Grace Condon could recover only the premium, amounting to $1,105.00, paid by the decedent to Inter-State. The decision of the magistrate was affirmed by the district court, and Mary Grace Condon appeals. We affirm.
 
 I.
 
 2
 On March 10, 1985, Bruce Condon, the husband of appellant Mary Grace Condon, executed a standard form application to purchase from Inter-State Assurance Co. a term life insurance policy of $200,000. The application contained the following clause:
 
 
 3
 No insurance shall take effect (except as otherwise provided in the Temporary Life Insurance Agreement, if an advance payment has been made and such agreement issued) unless and until a policy has been delivered to and accepted and the first premium paid during the lifetime and prior to any change of health of the Proposed Insured ...
 
 
 4
 The agent forwarded Condon's signed application to Inter-State's home office in Des Moines, Iowa, and Inter-State took steps to investigate Condon's health. On May 9, 1985, Inter-State received the results of Condon's blood test, which were normal.
 
 
 5
 Inter-State approved Condon's application that same day and directed the agent who had sold Condon the policy to mail Condon's first premium to the home office. Inter-State then prepared Condon's insurance policy and inserted on the policy's cover sheet, "Effective Date: May 09, 1985".
 
 
 6
 The policy also provided that the annual premium would be payable each year on May 9, all cash values would be measured from May 9, and that grace periods for the late payment of premiums would be measured from the date the premiums were due, May 9.
 
 
 7
 On May 14, 1985, Inter-State delivered the term life insurance policy for $200,000 to Condon by placing the policy in the mail to the agent.* On April 29, 1985, prior to delivery of the policy, Condon visited his personal physician complaining of a "fullness" in his throat. On May 5, 1985, Condon entered Bayside Human Hospital for diagnostic testing. On May 11, 1985, the doctors examining Condon informed him that he was suffering from a cancerous lesion in his throat. As a result, the magistrate concluded that Condon suffered a change in health on May 11, 1985, so as to render the policy not effective.
 
 
 8
 Bruce Condon did not inform the insurance agent about his changed condition until December of 1985, and on February 25, 1986, he died as a result of the throat cancer. Mary Grace Condon subsequently claimed the $200,000 death benefit, and Inter-State in turn filed this action with the district court. The sole issue in this case is whether the effective date stated on the policy, May 9, 1985, created a conflict with the requirement stated in the application that the policy would become effective upon delivery to the proposed insured, in this case on May 14, 1985, provided that his health had not changed in the interim. Bruce Condon's health changed on May 11, 1985, after the stated effective date in, but before delivery of, the policy.
 
 II.
 
 9
 In Virginia, if an insurance policy "is susceptible of two constructions, one of which would effect coverage and the other would not, the court will adopt that construction which will afford coverage." Lincoln National Life Insurance Co. v. Commonwealth Corrugated Container Corp., 229 Va. 132, 327 S.E.2d 98, 101 (1985). Both constructions must follow from a reasonable interpretation of the language of the documents which, taken together, comprise the insurance contract. And, like any other contract, an insurance policy "should be construed 'according to the ordinary sense and meaning of the terms employed, and, if they are clear and unambiguous, their terms are to be taken in the plain, ordinary and popular sense.' " Combs v. Equitable Life Insurance Co., 120 F.2d 432, 436 (4 Cir.1941), quoting St. Paul Fire & Marine Insurance Co. v. Ruddy, 299 F. 189, 193 (8 Cir.1924).
 
 
 10
 Mrs. Condon does not argue that the condition precedent requiring the proposed insured's good health to remain unchanged prior to delivery of the policy is invalid, and similar conditions precedent have been upheld in Virginia. See, e.g., Hayes v. Durham Life Insurance Co., 198 Va. 670, 96 S.E.2d 109 (1957). Instead, she claims that the effective dating of the policy on May 9, 1985 waived the delivery requirement, or at the very least creates ambiguity in the terms of the coverage, which must be construed to the insured's benefit. The question as we view it, however, is not when, but whether, the insurance took effect. The May 9 date became the effective date for all future payment of premiums, provided that upon delivery Mr. Condon met all the conditions precedent to receiving coverage.
 
 
 11
 The most clearly analogous case decided in this circuit is Combs v. Equitable Life Insurance Co. It applied Virginia law and it is Virginia law which applies here. In that case, Combs signed an application which stated in part that
 
 
 12
 the company shall incur no liability under the policy issued until said policy is delivered to me and the entire first premium therefor is actually paid while I am in good health, and then only if I have not consulted or been treated by any physician since the date of the medical examination for this policy, and if so delivered, said policy shall be deemed to have taken effect as of its date of issue.
 
 
 13
 120 F.2d at 434. Before delivery of the policy, Combs received an examination at a sanatorium which disclosed that he suffered from an incurable lung disease. He told his agent, however, that the doctors had not found anything wrong with him. In Combs, we were asked to resolve the meaning of the terms "good health" and "consulting a physician," but our reasoning is applicable here. We stated that the "provisions of the application under consideration constituted conditions precedent to a liability on the contract, and as they were never fulfilled, the policy of insurance did not go into effect." 120 F.2d at 437. See also Elliott v. Interstate Life and Accident Insurance Co., 211 Va. 240, 176 S.E.2d 314 (1970)
 
 
 14
 In Olsen v. Federal Kemper Life Assurance Co., 68 Or.App. 90, 681 P.2d 144 (1984), aff'd in banc, 299 Or. 169, 700 P.2d 231 (1985), a life insurance applicant received a policy on January 16, 1981 which stated that the policy date was January 1, 1981. On January 2, 1981, the applicant learned that he was suffering from cancer, from which he eventually died. In construing the alleged conflict between the date stated on the policy and the date of the delivery, the court stated that "[t]here can be no reasonable doubt that [the insurer] intended the language in the application to be a condition precedent to its liability on the policy ..." 681 P.2d at 145-56 (footnote omitted). Likewise, there is little doubt that, in the instant case, Inter-State did not intend to assume liability for Mr. Condon's death until delivery of the policy.
 
 
 15
 We are mindful of the fact that in this case Inter-State sold Condon a policy for which he made an annual premium payment beginning on May 9, 1985. During the time period from May 9 to May 14, however, Condon assumed the risk of his own death. The "gap" between the effective date of the policy, from which the due date of premium payments are calculated, and the date of delivery, on which attachment of the risk to the insurer commences, may in other instances contravene public policy. We conclude in this instance, however, that the proposed insured did not satisfy all of the conditions precedent necessary to receive coverage under the policy, nor did he inform the insurer of his changed health status, so that the policy was not in effect when he died.
 
 
 16
 AFFIRMED.
 
 
 
 *
 An insurance policy is "delivered" on the date the company mails the policy to its agent for delivery to the insured. Rose v. Travelers Indem. Co., 209 Va. 755, 167 S.E.2d 339 (1969)